## STATE OF MAINE *vs.* FRANK W. SANDFORD.

### Franklin.    Opinion January 3, 1905.

*Manslaughter.    Evidence.    Basis of Verdict.    Instructions.    Belief of Jury.*

The respondent was tried and convicted upon an indictment charging him with manslaughter in causing the death of one Leander Bartlett, a young man of about fifteen years of age.

The contention of the government was that Bartlett, as a member of a community or religious sect at Shiloh in the town of Durham, was under the control and dominion of the respondent; that the situation was such that the respondent owed him the duty of supplying him with proper and sufficient food, and with proper medical attendance and medical remedies when sick; that Bartlett became seriously sick with diptheria and was in great need of medical attendance and medicine, but that the respondent, although having full knowledge of the facts wilfully neglected to provide, or to allow others to provide for him medical attendance or medical remedies of any kind, and thereby caused or accelerated his death. It was also contended by the state that Bartlett, while in the condition of extreme exhaustion by reason of his sickness, was obliged to submit to an absolute fast for a long period of time before his death, by reason of the general or specific directions of the respondent.

As to the contention of the state that the respondent failed to perform a known duty owed by him to Bartlett, by not providing medical attendance and medical remedies for the latter in the serious condition in which he then was, there was no dispute whatever as to the facts, the respondent relying, as an answer to this contention, upon an alleged conscientious disbelief in the efficacy of medical remedies, and upon a belief that the proper treatment of the sick was by prayer. In relation to this position of the defense the following instruction was requested by the respondent "Failure to provide medical aid or the attendance of a physician, with resulting death, in the absence of a statute requiring medical aid or the attendance of a physician, if the action is under the bona fide belief that medical aid is not required, and that the proper method of healing is by prayer, is not manslaughter." The court had already given this instruction in substance, but had added the following qualifications: "That is, it must be a conscientious disbelief in medicine, a bona fide disbelief, a real disbelief. And if a person having that disbelief in medicine had some other belief or some other practice, or some other way to help cure the sick which he honestly believed, it would then be his duty to apply that other

method, and so, if he believed in the prayer of faith, he ought to apply that. But if he failed to use the prayer of faith, unless you believe that the lack of it hastened the death, or caused the death of the patient, the omission to use the prayer of faith would not·be criminal negligence, because it did not produce any results. On the other hand, if you believe that the omission to use the prayer of faith did hasten the death of Leander Bartlett, and if that was the honest· belief of the defendant and he failed, knowing the circumstances, knowing his duty, why it would constitute a basis for manslaughter, would be evidence of negligence." When the requested instruction was presented to the presiding justice, he remarked: "I have already given instructions, with some qualifications which I think must stand." These qualifications, therefore, must be considered as subject to the respondent's exception to the refusal to give the instruction without qualification.

*Held:* that the instructions given as qualifications to the instructions requested by the respondent, were erroneous. That under these instructions the conviction or acquittal of the respondent would depend, not upon the jury's finding as to the truth of some controverted fact about which there was evidence for and against, not as to the truth of some scientific theory, as to which those specially qualified by study and experience had testified, questions which of course must be submitted to the determination of the jury, but upon the belief of the individual members of the jury upon the question of the efficacy of prayer as a means of cure for the sick. Tried before one jury, a respondent would be convicted, while before another, he would be acquitted, upon precisely the same state of facts, the result depending entirely upon whether the jury, before which a respondent happened to be tried, entertained one belief or the other upon this question concerning which the testimony of no witness can be offered and the determination of which is outside of the domain of the law.

The guilt or innocence of any person accused of crime, whatever his belief may be in this·respect, and the result of a criminal trial, should not depend upon the beliefs of the members of a jury on the question of the efficacy of prayer as a means of cure for the sick, or upon their religious belief in any other respect. A contrary doctrine would be in direct opposition to our theory that this is a government of laws and not of men. Questions of fact, and even questions as to the truth of scientific theories must be submitted to the determination of juries, but questions as to the nature of one's legal duties, and the extent of his legal responsibilities, both civil and criminal, must be governed by general rules of law which will apply to all alike, and which will control the action of juries, so that one result only can follow from their findings of fact upon the issues of fact involved.

On exceptions by defendant. Sustained.

Indictment for manslaughter wherein the defendant was charged with causing the death of one Leander Bartlett, who died of diptheria

at the community known as Shiloh, located at Durham, in the County
of Androscoggin, on the twenty-fifth day of January, 1903.

The jury rendered a verdict of guilty.

The case is sufficiently stated in the opinion.

*W. B. Skelton,* County Attorney, for the state.

*H. E. Coolidge and H. W. Oakes,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, PEABODY,
SPEAR, JJ.

WISWELL, C. J.   The respondent was tried and convicted upon
an indictment charging him with manslaughter in causing the death
of one Leander Bartlett, a young man of about 15 years of age, on
January 25, 1903.   To understand the bearing of the questions
raised by the exceptions upon which the case comes to the law court,
it is necessary to state, to some extent, the contentions of the State
and of the defense as shown by the indictment and the evidence, a
full report of which accompanies the case and is made a part of the
exceptions.

The indictment charges with great particularity the manner in
which it was claimed the death of Bartlett was caused by the respon-
dent.   It is therein alleged that in January, 1903, and for a long
time before, there was within the town of Durham in Androscoggin
County, a community or association or aggregation of men, women
and children, or, as it is called by counsel for the respondent, "a
religious sect," under the control, government, supervision, manage-
ment and dominion," of the respondent; that at the time of his death
Leander Bartlett was one of the members of this association, and as
one of such members was under the control, supervision and domin-
ion of the respondent; that it was the duty of the respondent to
provide for the inmates and members of such association, including
Bartlett, "reasonable, sufficient and proper food, clothing, shelter,
medicines and medical supplies and attendance in sickness and in
health, according to the needs of each of them;" and that it was "the
duty of said Frank W. Sandford to refrain from doing, and to prevent
the doing of, any act that should detract from, interfere with, or

imperil the comfort, health, and welfare of any inmate or member thereof;" that these duties the respondent owed to the deceased as one of the inmates or members of such association; that the deceased, during the time mentioned in the indictment was sick and in great need of medicine and of medical attendance, and that his condition was well known to the respondent; "that the said Frank W. Sandford, well knowing the premises, did then and during all of said time last mentioned there wilfully, knowingly and feloniously fail, neglect and refuse to furnish, or cause to be furnished, unto said Leander Bartlett, alias Leander A. Bartlett, reasonable, sufficient and proper food, clothing, shelter, medicines, medical supplies and attendance, and did then and during all of said time last mentioned there wilfully, knowingly, and feloniously fail, neglect and refuse to do, or cause to be done, any acts or things conducive to the health, comfort, and welfare of said Leander Bartlett, alias Leander A. Bartlett, that on the contrary the said Frank W. Sandford did then, and during all of said time last mentioned there, wilfully, knowingly and feloniously, cause the said Leander Bartlett, alias Leander A. Bartlett, to be deprived of, and kept without, all reasonable, sufficient and proper food, clothing, shelter, medicines, medical supplies and attendance," etc., whereby, it is alleged in the indictment, that the respondent, "him, the said Leander Bartlett, alias Leander A. Bartlett, in manner and form aforesaid feloniously did kill and slay," etc.

As to existence of this community at Shiloh, so called, in the town of Durham, and that Bartlett, at the time of his sickness and death, was a member thereof, there was no controversy at the trial. Neither was it disputed that the community was under the leadership of the respondent, but there was considerable controversy as to the nature and extent of his control and authority over its individual members. It appears from the evidence that Bartlett was taken sick about two weeks prior to the time of his death on January 25; that he continued to grow worse from day to day until about a week before his death, when he was removed from the main building, where he had been living with his mother until that time, to the building used as a hospital, his mother going with him there, and continuing to have, as before, his immediate care, with the assistance of others; he continued

to grow worse until on the Friday before his death, which occurred early Sunday morning, he was found to have diptheria in an advanced state, and on Sunday morning died. During all of this time no physician was called to see him, and even after the very serious nature and state of his disease was discovered, no physician was called and no medicines or medical remedies whatever were prescribed or used, but he was allowed to remain in this condition without medicine, medical care or attendance until he died. There was a woman in the institution who had, according to her testimony, formerly been a physician belonging to the school of osteopathy. She had the general superintendence of all of the sick in this institution, and was the one who made the diagnosis of diptheria in Bartlett's case, on Friday. But whatever medical skill or knowledge she may have possessed, was not exerted in relieving Bartlett's condition; it being the belief of the community, as shown by the evidence upon both sides, that the proper treatment of the sick was not by the use of medical remedies, but by prayer for recovery, after a confession of sin.

Evidence upon the part of the state was introduced for the purpose of showing the extent of the control that the respondents possessed and exercised over all of the members of the association, the government claiming that his control over all of his affairs of the institution and over the conduct of all of the members, in all respects and as to all details, was absolute. And the claim of the government was and is that having such absolute control, the respondent caused or accelerated the death of Bartlett by a failure to perform a known duty in two particulars, one, by the failure to provide medical attendance and the neglect to use certain specific and well recognized remedies for the disease with which Bartlett was suffering, and the other because of the neglect to provide suitable, or any, food for the deceased from some time on Friday before his death until the time of his death on Sunday morning. As to the last particular, it was contended by the government that on that Friday a general and absolute fast was ordered by or with the knowledge of the respondent, which was made applicable to every person in the community, old and young, sick and well, that this fast was applicable to the deceased, in his precarious condition, so that he did not have any food of any

kind during this period, and that those who had the immediate charge and care of the deceased were prohibited, either by the general or specific orders of respondent, from supplying him with any food, although he was entirely conversant with the deceased's condition at that time.

In regard to the allegation and contention of the state that the respondent failed to perform a known duty in not providing medical attendance and remedies for the young man in his extremity, there was no dispute whatever as to the facts, the respondent relying as an answer to this contention upon his alleged belief, he did not himself testify, and that of all members of the community, that such treatment was not efficacious; but as to the existence of an absolute and general fast immediately prior to Bartlett's death, and as to the claim that Bartlett himself was not allowed to have any food during the period of time referred to, there was much controversy in the evidence.

With this general statement we will come to a consideration of the exceptions, which may be classified into three groups, the exclusion of certain evidence offered by the respondent; the admission, against objection, of certain evidence offered by the respondent; the admission, against objection, of certain testimony offered by the government; and the refusal to give certain requested instructions except as already given in the charge and subject to certain qualifications. As to the first exception; the government introduced the testimony of a number of witnesses who testified that Sandford, at a meeting in the chapel, attended by a large number of the members of the community, made statements to the effect that Bartlett was "in rebellion," and that he would be glad to see his dead body stretched out before him. It is said in the bill of exceptions: "In connection with the testimony regarding the statement of the defendant at the chapel, one Nellie Smith, a member of the school, was called by the defendant, and was interrogated as follows with respect to Mr. Sandford's statement in the chapel with reference to Bartlett:

Q. Do you know as a matter of fact, whether or not Mr. Sandford prayed for Mr. Bartlett's recovery from sickness?

A. I do not.

Q.- Hear Mr. Sandford say anything about it—whether he did or didn't?"

This question was objected to and excluded, and it is now claimed that the question had reference to a further statement claimed to have been made by the respondent at the same time and as a part of the same remarks that were referred to by the witnesses called for the government. The statement quoted from the bill of exceptions substantiates to some extent this claim made by counsel for the respondent. It is of course true that if the presiding judge understood, or should have understood, that the question referred to the same occasion that the government witnesses had testified in relation to, the exclusion of this question was erroneous, because if the respondent, during his remarks upon that occasion and in connection with the previous statement which the witnesses testified to, had said that he had prayed for the recovery of Bartlett, it would have had some tendency to explain or modify this statement testified to by the government witnesses, or even to contradict their testimony in this respect, and it certainly would have a bearing as showing the respondent's motives and disposition towards Bartlett. Under these circumstances the question and answer would have been admissible under the general rule, that where a portion of a statement is testified to by one side, the other side is entitled to have the whole of the statement, upon that subject matter, admitted. But the question itself does not show that it had reference to this occasion, and an examination of the testimony, made a part of the bill of exceptions, shows, not only that there was nothing to give the presiding justice any intimation that the question referred to the occasion already testified to, but, also, that it did not refer to the particular occasion testified to by the government witnesses. When a report of the testimony is made a part of the bill of exceptions, it must control the allegations in the bill as to matters of fact, if there is any conflict between them. *Harmon* v. *Harmon,* 63 Maine, 437; *Tower* v. *Haslam,* 84 Maine, 86. As to what did occur, and as to what the respondent did say upon the particular occasion in the chapel, numerous witnesses called by the defense were allowed to testify without objection. The question excluded merely called for a self

serving statement, claimed to have been made by the accused, and was properly excluded.

As to the next class of exceptions; a witness called by the state was allowed to testify with considerable detail as to particular instances and cases which had a tendency to show the nature and extent of the authority that the respondent exercised over different members of the community, this evidence was admitted subject to the respondent's objections and exceptions. It must be remembered that it was not claimed by the state that the respondent had the immediate care of Bartlett during his last sickness, nor that it was his personal duty to attend to his wants, either as to medical remedies or to the supply of necessary and proper food. Bartlett was under the immediate care of his mother and of other members of the community whose duty it was to attend to the sick. But the contention of the government was that the respondent exercised such control over those who were in attendance upon and caring for Bartlett, and that he dominated their wills to such an extent, that his orders were carried out in the treatment of Bartlett by those who were subservient to his will, and whose conduct in this respect, as well as in all others, was subject to his control and authority, and that the neglect complained of in these respects, by those who were in attendance upon, and who did have the care of Bartlett, was the result of the respondent's general or specific directions. It was necessary for the government to prove its contention in this respect, and for this purpose, we think that it was entirely competent to introduce evidence of specific instances showing the manner and extent that authority was exercised by the respondent in these instances. This testimony was not in relation to other criminal acts, or criminal negligence of the respondent, introduced for the purpose of showing some probability of the respondent's guilt in this case, it was offered and admitted simply for the purpose of showing, so far as it had that effect, the nature and extent of the authority which the respondent possessed and exercised over the individual members of this community. It is urged that this testimony, in some instances, had a tendency to hold the defendant up to ridicule. But this is no objection to the admissibility of the testimony if it

were otherwise competent for the purpose for which it was admitted.

The other exceptions are to the refusal of the presiding justice to give certain requested instructions, only one of which, in our opinion, need be considered. The respondent requested this instruction: "Failure to provide medical aid or the attendance of a physician, with resulting death, in the absence of a statute requiring medical aid or the attendance of a physician, if the action is under the bona fide belief that medical aid is not required, and that the proper method of healing is by prayer, is not manslaughter." The court had already given this instruction in substance as follows: "When the death of a human being from disease is caused or hastened by reason of the omission to call in a physician, or to provide medicine, when such omission proceeds not from any criminal indifference to the needs of the person, but from a conscientious disbelief as to the efficacy of medicine or medical attendance, it is not criminal negligence, and does not constitute a basis for conviction for manslaughter." To which instruction the following qualifications were added. "That is, it must be conscientious disbelief in medicine—a bona fide disbelief —a real disbelief. And if a person having that disbelief in medicine had some other belief, or some other practice, or some other way to help cure the sick, which he honestly believed, it would then be his duty to apply that other method. And so, if he believed in the prayer of faith, he ought to apply that. But if he failed to use the prayer of faith, unless you believe that the lack of it hastened the death, or caused the death of the patient, the omission to use the prayer of faith would not be criminal negligence, because it did not produce any results. On the other hand, if you believe that the omission to use the prayer of faith did hasten the death of Leander Bartlett, and if that was the honest belief of the defendant and he failed, knowing the circumstances, knowing his duty, why it would constitute a basis for manslaughter, would be evidence of negligence."

When the requested instruction above quoted was presented to the presiding justice, he remarked: "I have already given instructions which cover that, with some qualifications which I think must stand." We think, therefore, that this qualification which we have quoted must be considered as subject to the respondent's exceptions. It is

undoubtedly true that the question whether or not the respondent resorted to the so called "prayer of faith" for the purpose of effecting the cure of Bartlett, was a proper one for the jury to consider in determining whether or not the failure to resort to medical remedies and to employ the assistance of a physician, was based upon the conscientious disbelief in the efficiency of such remedies. But this instruction, or qualification of the general rule given by the presiding justice, went much further than this. It was in effect, that if the respondent conscientiously believed in the efficacy of prayer for the cure of the sick, rather than in the use of medicine and in the employment of physicians, and failed to resort to this method of cure believed in by him, that this failure would constitute a basis for a conviction for manslaughter, provided the jury believed that it caused or hastened the death of Bartlett.

Thus, the conviction or acquittal of the respondent would depend not upon the jury's finding as to the truth of some controverted fact, about which there was evidence for and against, not even as to the truth of some scientific theory, as to which those specially qualified by study and experience had testified and given their opinion, questions which of course must be submitted to the determination of the jury, but upon the belief of the individual members of a jury upon the efficacy of prayer as a means of cure for the sick, a question about which there is undoubtedly a considerable difference of opinion. Tried before one jury, a respondent would be convicted, while before another, he would be acquitted, upon precisely the same state of facts and the same findings of facts, the result depending entirely upon whether the jury, before which a respondent happened to be tried, entertained one belief or the other upon this question concerning which the testimony of no witnesses can be offered, and the determination of which is outside of the domain of the law.

We do not think the guilt or innocence of any person accused of crime, whatever his belief may be in this respect, or that the result of a criminal trial should depend upon the beliefs of the members of a jury on the question of the efficacy of prayer as a means of cure for the sick, or upon their religious beliefs in any other respect. If a person charged with crime were to be convicted or acquitted

according to the belief of a jury upon such questions, it would be in direct opposition to our theory that our government is one of laws and not of men. Questions of fact, and even questions as to the truth of scientific theories must be submitted to the determination of juries, but questions as to the nature of one's legal duties, and the extent of his legal responsibilities, both civil and criminal, must be governed by general rules of law which will apply to all alike, and which, theoretically at least, will control the action of juries, so that one result only can follow from the findings of fact upon the issues of fact involved.

It may be true that where a person is charged with responsibility of the death of another, because of his failure and neglect to procure medical attendance, or to allow the use of medical remedies, and such person has a conscientious disbelief in the efficacy of such treatment and the use of such remedies, but does believe in the value of some other form of treatment, if any there be, which is recognized by some school of science as proper under the circumstances of the case, that it would be his duty to resort to this recognized form of treatment believed in by him, and that a failure to do so might be evidence of neglect upon his part sufficient to hold him criminally liable for the death of a person which resulted from such failure. But such a doctrine, it is plain, is entirely different from the one under consideration, and would not warrant giving to the jury the latitude that was given in this case.

A suggestion made by the court in *Reg* v. *Wagstaffe*, 10 Cox, C. C. 530, aptly illustrates our views in regard to the responsibility of a person who entertained a particular belief as to the proper method for the treatment of the sick. Suppose a person charged with a neglect of duty in the respect which we have been considering, believed conscientiously, that the only efficient remedy for a person afflicted with disease was to take the person to a particular shrine, could it be that a failure to do this would sustain a charge of manslaughter, even if the jury believed that this failure either caused or accelerated the death of the one diseased. But a person may as conscientiously believe in this remedy as in the efficacy of prayer for the sick, and while both beliefs may be equally entitled to respect, the

conviction of a person in any case should not depend upon whether the jury, before which he is tried, entertains the one belief or the other, or neither.

Although the case was tried with great care by the presiding justice, and although the instructions to the jury, in all other respects, were correct, in our opinion, and were especially· clear and full, we feel that this qualification of the rule as given by the court, and as requested by the respondent, left an opportunity to the jury to convict the respondent upon their belief as to a matter which the court cannot determine and of which it cannot take cognizance, and that therefore the exceptions must be sustained.

*Exceptions sustained.*