## J. H. BECK v. STATE.

No. A-4225.    Opinion Filed Feb. 21, 1925.
(233 Pac. 495.)

(Syllabus.)

Parent and Child—Refusal of Parent to Provide Medical Treatment for Child Suffering from Lockjaw Held Criminal Offense. Where a boy 11 years of age has for hours suffered intense pain from lockjaw, a parent in charge is guilty of a violation of section 1855, Comp. Stat. 1921, in failing or refusing to provide medical treatment for the relief or cure of the child so afflicted.

Appeal from County Court, Grady County; J. E. Shelton, Judge.

J. H. Beck was convicted of failing to furnish medical aid to his son, and he appeals. Modified and affirmed.

Bond, Melton & Melton, for plaintiff in error.

The Attorney General and John Barry, Asst. Atty. Gen., for the State.

BESSEY, P. J.   J. H. Beck, plaintiff in error, in this opinion referred to as the defendant, was by verdict of a jury found guilty of omitting to furnish medical aid to his child, Johnnie Beck, without lawful excuse. His punishment was assessed at confinement in the county jail for a period of 6 months and to pay a fine of $50 and costs.

The record in this case is more remarkable for what it does not contain than for what it really does show.   It seems that an 11 year old son of the defendant had for some hours been ill from tetanus or lockjaw, from which he was suffering intense pain and rigidity of the muscles which caused his head and other portions of his body to be drawn in an unnatural condition.   Some neighbors, together with members of defendant's family at his home where the boy lay ill, sought to relieve the child's suffering by prayer and appeals for divine aid; other neighbors intervened and advised the calling of a physician, which was at first refused and the suggestion repulsed.   Finally, under pressure, consent was given by the defendant, to the administering of medical treatment.   Accordingly a serum treatment was administered by two physicians, but the boy expired six or eight hours later.   In the opinion of these physicians the treatment was administered too late.   From their testimony the inference may be drawn that, if the treatment had been administered earlier, the boy's life might have been saved.

There were no witnesses called or evidence introduced at the trial on behalf of the defendant.

The record does not disclose that the defendant sought to justify under his constitutional right to the free exercise of his religious opinions and mode of worship.   Although the question is therefore not directly at issue here, this court will adhere to the rule announced in Owen v. State,

6 Okla. Cr. 110, 116 P. 345, 36 L. R. A. (N. S.) 633, Ann. Cas. 1913B, 1218; McMasters v. State, 21 Okla. Cr. 318, 207 P. 566, 29 A. L. R. 292.

This prosecution is based upon the provisions of section 1855, Comp. Stat. 1921, as follows:

"Any parent of any child who wilfully omits, without lawful excuse, to perform any duty imposed upon him by law to furnish necessary food, clothing, shelter or medical attendance for such child is guilty of a misdemeanor."

The provisions of this section should be reasonably construed. A fair amount of discretion is vested in parents charged with the duty of maintaining and bringing up infant children, and this statute will not be construed to mean that a physician must be called for every trifling complaint with which a child might be afflicted, such as may be overcome by ordinary household nursing by members of the family. But where, as in this case, a child is suffering intense pain, and where the muscles of the body have become drawn and rigid, it would seem that an ordinarily kind or prudent parent, solicitous for the welfare of his child and anxious to promote its recovery, would call in medical aid. A humane desire to give at least temporary relief from suffering should alone be sufficient to impel a parent to call a physician where his child is in intense pain during a prolonged convulsion. Under such circumstances it would seem that a parent is guilty of a violation of the provisions of this statute where he fails to furnish medical attendance.

To sustain a conviction in a case of this character the evidence should show a wilful neglect of duty under all the circumstances. The defendant claims, on appeal, that the evidence does not show that he was neglecting a plain duty imposed by law; that the evidence does not show that he knew the gravity of the malady, but does show that, so soon as he was apprised of its gravity and

probable fatal results, he consented to the administering of the serum; and that, if he made a mistake in deferring action until it was too late, it was an honest mistake, for which he should not be held criminally liable.

These were questions primarily for the jury. While the testimony in this case as to the length of time this boy had suffered before the serum was administered and the attitude of the defendant in neglecting and refusing to call a physician or in discouraging medical treatment is not as definite as it might be, the weight of the testimony was for the jury. From the testimony it evidently appeared to the jury, and it appears to us, that the defendant was grossly remiss in his duty towards his child in not calling a physician earlier, and that the evidence as a whole is sufficient to support the verdict.

Considering the fact that the defendant seems to have been a member of a religious sect which believes in faith or divine healing, and that he may have been influenced by other members of the sect there assembled, we believe that the punishment was excessive, and should be modified by expunging the jail sentence. It is therefore ordered that the judgment be and the same is hereby modified to the payment of a fine of $50 and costs of this action, without imprisonment, and the judgment as so modified is affirmed.

DOYLE and EDWARDS, JJ., concur.