[No. 656-41011, 41012-1. Division One—Panel 1. May 3, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. WALTER L. WILLIAMS *et al., Appellants.*

910

*Kempton, Savage & Gossard* and *Anthony Savage, Jr.,* for appellants (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael P. Ruark, Deputy,* for respondent.

HOROWITZ, C.J.—Defendants, husband and wife, were charged by information filed October 3, 1968, with the crime of manslaughter for negligently failing to supply their 17-month child with necessary medical attention, as a result of which he died on September 12, 1968. Upon entry of findings, conclusions and judgment of guilty, sentences were imposed on April 22, 1969. Defendants appeal.

The defendant husband, Walter Williams, is a 24-year-old full-blooded Sheshont Indian with a sixth-grade education. His sole occupation is that of laborer. The defendant wife, Bernice Williams, is a 20-year-old part Indian with an 11th grade education. At the time of the marriage, the wife had two children, the younger of whom was a 14-month son. Both parents worked and the children were cared for by the 85-year-old mother of the defendant husband. The defendant husband assumed parental responsibility with the defendant wife to provide clothing, care and medical attention for the child. Both defendants possessed a great deal of love and affection for the defendant wife's young son.

The court expressly found:

That both defendants were aware that William Joseph

Tabafunda was ill during the period September 1, 1968 to September 12, 1968. The defendants were ignorant. They did not realize how sick the baby was. They thought that the baby had a toothache and no layman regards a toothache as dangerous to life. They loved the baby and gave it aspirin in hopes of improving its condition. They did not take the baby to a doctor because of fear that the Welfare Department would take the baby away from them. They knew that medical help was available because of previous experience. They had no excuse that the law will recognize for not taking the baby to a doctor.

The defendants Walter L. Williams and Bernice J. Williams were negligent in not seeking medical attention for William Joseph Tabafunda.

That as a proximate result of this negligence, William Joseph Tabafunda died.

Findings 5, 6 and 7. From these and other findings, the court concluded that the defendants were each guilty of the crime of manslaughter as charged.

Defendants take no exception to findings but contend that the findings do not support the conclusions that the defendants are guilty of manslaughter as charged. The contentions raise two basic issues, (1) the existence of the duty to furnish medical aid charged by the information to be violated[1] and the seriousness of the breach required; and (2) the issue of proximate cause, *i.e.*, whether defendants were put on notice, in time to save the child's life, that medical care was required. Because the nature of the duty and the quality or seriousness of the breach are closely interrelated, our discussion of the first issue involved will embrace both matters.

---

[1]The information, in charging the violation of the duty owed, alleged:

[T]hey, the said defendants, then and there being the father, mother, guardian and custodian of one William Joseph Tabafunda, and being then and there under the legal duty of providing necessary food, clothing, care and medical attention to said William Joseph Tabafunds [*sic*], a minor child under the age of sixteen years, to-wit: of the age of seventeen (17) months, did then and there unlawfully and feloniously fail and neglect, without lawful excuse, to provide said . . . child . . . with necessary food, clothing, care and medical attention . . .

 Parental duty to provide medical care for a dependent minor child was recognized at common law and characterized as a natural duty. *In re Hudson,* 13 Wn.2d 673, 126 P.2d 765 (1942); *White v. McDowell,* 74 Wash. 44, 132 P. 734 (1913); *see Commonwealth v. Breth,* 44 Pa. County Ct. 56 (1915); Annot., 100 A.L.R.2d 483, §§ 6, 15[a], 15[b] (1965). In Washington, the existence of the duty is commonly assumed and is stated at times without reference to any particular statute. *See, e.g., In re Adoption of Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969); *In re Hudson,* 13 Wn.2d 673, 693, 126 P.2d 765 (1942); *In re Guardianship of Rudonick,* 76 Wn.2d 117, 125, 456 P.2d 96 (1969). The existence of the duty also is assumed, but not always defined, in statutes that provide special criminal and civil sanctions for the performance of that duty. These include RCW 26.16.205, 26.20.030, 26.24.090, 26.32.140, 26.37.050 and chapter 26.21. *See State v. Russell,* 68 Wn.2d 748, 415 P.2d 503 (1966). Thus, RCW 26.16.205 imposes civil liability on parental property for the "expenses of the family and education of the children." The quoted language is broad enough to include "necessaries," and necessaries include necessary medical expense of dependent minor children which it is the duty of a parent to provide. On the question of the quality or seriousness of breach of the duty, at common law, in the case of involuntary manslaughter, the breach had to amount to more than mere ordinary or simple negligence—gross negligence was essential. *See* 1 O. Warren, Homicide § 86 at 424 (Permanent ed. 1938); R. Perkins, Criminal Law 60-61 (1957). In Washington, however, RCW 9.48.060[2] (since amended by Laws of 1970, ch. 49, § 2) and RCW 9.48.150[3] supersede both voluntary and

---

[2]RCW 9.48.060 provided in part:

"In any case other than those specified in RCW 9.48.030, 9.48.040 and 9.48.050, homicide, not being excusable or justifiable, is manslaughter."

[3]RCW 9.48.150 provides:

"Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent."

involuntary manslaughter as those crimes were defined at common law. Under these statutes the crime is deemed committed even though the death of the victim is the proximate result of only simple or ordinary negligence. *State v. Brubaker*, 62 Wn.2d 964, 385 P.2d 318 (1963); *State v. Ramser*, 17 Wn.2d 581, 136 P.2d 1013 (1943); *State v. Hedges*, 8 Wn.2d 652, 113 P.2d 530 (1941).

■ The concept of simple or ordinary negligence describes a failure to exercise the "ordinary caution" necessary to make out the defense of excusable homicide. RCW 9.48.150. Ordinary caution is the kind of caution that a man of reasonable prudence would exercise under the same or similar conditions. If, therefore, the conduct of a defendant, regardless of his ignorance, good intentions and good faith, fails to measure up to the conduct required of a man of reasonable prudence, he is guilty of ordinary negligence because of his failure to use "ordinary caution." *See State v. Hedges, supra.* If such negligence proximately causes the death of the victim, the defendant, as pointed out above, is guilty of statutory manslaughter.

In the instant case, defendants contend that the only duty to provide medical care for the infant child is the statutory duty set forth in RCW 26.20.030; that the court having concluded that the defendants were not guilty of "willful . . . misconduct," that no duty to furnish medical care was violated and that, accordingly, defendants are not guilty of the crime of statutory manslaughter charged in the information.

■ RCW 26.20.030 (1) (b) makes it a felony for a person who "willfully omits, without lawful excuse, to furnish necessary . . . medical attendance for his or her child . . . ." The words "willfully omits" are, as pointed out in *State v. Russell*, 73 Wn.2d 903, 907-08, 442 P.2d 988 (1968), used in two senses, namely, (1) "an act or omission done intentionally . . . ." or (2) when used in statutes making nonsupport a crime, "an absence of lawful excuse or justification on the part of the accused parent." It was further pointed out that, by reason of RCW 26.20.080, the state

meets its burden of proving willfulness and absence of lawful excuse on a prima facie basis when the evidence, directly or circumstantially, reveals a failure on the part of a physically or vocationally able parent to furnish the required medical attendance. Hence, RCW 26.20.030 is presumptively violated either because a defendant intentionally omits to furnish necessary medical care, or omits so to do without lawful excuse.

■ Defendants' contention misconceives the significance of the words "willful . . . misconduct" contained in the conclusions because of defendants' failure to recognize that "willful" is a phrase of double meaning. The presumption of correctness that attends judgments of the trial court is necessarily predicated upon the subordinate presumption of the correctness of findings and conclusions. To give proper effect to this presumption requires that findings, whether or not containing a conclusion of law, and conclusions of law be reconciled if reasonably possible. Such a reconciliation is entirely possible in the instant case by a proper interpretation of the phrase "willful . . . misconduct." Since the trial court expressly found that the defendants "had no excuse that the law will recognize for not taking the baby to a doctor," it is reasonable to conclude that the phrase "willful . . . misconduct," contained in the conclusion, merely means intentional misconduct. The conclusion, in light of the findings, means merely that the conduct, although not intentional, was without lawful excuse and therefore willful in the second sense. *State v. Russell*, 73 Wn.2d 903, 442 P.2d 988 (1968); *State v. McCarty*, 76 Wn.2d 328, 456 P.2d 350 (1969); *State v. Ozanne*, 75 Wn.2d 546, 452 P.2d 745 (1969). Even if it is assumed that the information charging the crime of manslaughter relied upon a violation of RCW 26.20.030(1)(b), the conviction must stand since the findings and supporting evidence are sufficient to support the conclusion that, in the second sense of the term, the defendants willfully violated the duty owing their deceased child.

■ Furthermore, the significance of the words "willful

. . . misconduct" contained in the conclusion is overstated. If it be assumed that RCW 26.20.030(1)(b) can be said to create a duty to furnish medical care otherwise not existing, as distinguished from a mere statement of a condition precedent to the imposition of a criminal sanction, then a duty may be said to exist even if the conditions permitting imposition of the criminal sanction do not. *See State v. Parmenter*, 74 Wn.2d 343, 444 P.2d 680 (1968). Hence, a conclusion that defendants' conduct was not willful does not mean that the duty has not been violated. It merely means that the special sanction of RCW 26.20.030(1)(b) cannot be invoked.

We need not, however, rest our decision solely on the above-mentioned grounds. The information charging statutory manslaughter made no mention of and did not purport to restrict itself to the violation of the duty set forth in RCW 26.20.030(1)(b). The information charged the violation of "the legal duty of providing necessary . . . medical attention to said . . . minor child . . ." This general language permits reliance upon the existence of the legal duty no matter from what source derived. We have already pointed out that such a parental duty is recognized in the decisions of this state and has been characterized as a natural duty existing independently of statutes. *In re Hudson, supra.* RCW 26.20.030(1) (b) is consistent with and therefore does not supersede the common law natural duty of parents to provide medical care for their minor dependent children. Thus, should RCW 26.20.030(1)(b) be repealed, it could not reasonably be claimed that parents were thereby absolved from their natural duty to provide necessary medical care for their minor dependent children. We therefore hold that the violation of the parental duty to furnish medical care to a minor dependent child, the other elements of manslaughter being present, is a sufficient basis on which to rest a conviction of the crime of manslaughter under RCW 9.48.060 and 9.48.150. *State v. Parmenter, supra. See Commonwealth v.*

*Breth, supra. See also State v. Brubaker, supra; State v. Ramser, supra; State v. Hedges, supra.*

■ In the instant case, however, the defendant husband is not the father of the minor child, nor has he adopted that child. Nevertheless, the evidence shows that he had assumed responsibility with his wife for the care and maintenance of the child, whom he greatly loved. Such assumption of responsibility, characterized in the information as that required of a "guardian and custodian," is sufficient to impose upon him the duty to furnish necessary medical care. *See State v. Parmenter, supra; White v. McDowell, supra. See generally,* Annot., 10 A.L.R. 1137, 1143 (1921); 39 Am. Jur. *Parent and Child* § 105 (1942); *State v. Noakes,* 70 Vt. 247, 40 A. 249 (1897); *State v. Sandford,* 99 Me. 441, 59 A. 597 (1905). *See also* RCW 9.01.030.

■ The remaining issue of proximate cause requires consideration of the question of when the duty to furnish medical care became activated. If the duty to furnish such care was not activated until after it was too late to save the life of the child, failure to furnish medical care could not be said to have proximately caused the child's death. Timeliness in the furnishing of medical care also must be considered in terms of "ordinary caution." The law does not mandatorily require that a doctor be called for a child at the first sign of any indisposition or illness. The indisposition or illness may appear to be of a minor or very temporary kind, such as a toothache or cold. If one in the exercise of ordinary caution fails to recognize that his child's symptoms require medical attention, it cannot be said that the failure to obtain such medical attention is a breach of the duty owed. In our opinion, the duty as formulated in *People v. Pierson,* 176 N.Y. 201, 68 N.E. 243 (1903), although involving a statute similar to RCW 26.20.030(1)(b), properly defines the duty contemplated by our manslaughter statutes RCW 9.48.060 and RCW 9.48.150. The court there said:

We quite agree that the Code does not contemplate the necessity of calling a physician for every trifling complaint with which the child may be afflicted which in most instances may be overcome by the ordinary house-

hold nursing by members of the family; that a reasonable amount of discretion is vested in parents, charged with the duty of maintaining and bringing up infant children; and that the standard is at what time would an ordinarily prudent person, solicitous for the welfare of his child and anxious to promote its recovery, deem it necessary to call in the services of a physician.

*People v. Pierson, supra* at 205. *Accord, Beck v. State,* 29 Okla. Crim. 240, 233 P. 495 (1925).

It remains to apply the law discussed to the facts of the instant case.

■■■ Defendants have not assigned error to the findings either on the ground that the evidence is insufficient to prove negligence or proximate cause, or that the state has failed to prove the facts found by failing to apply the required standard of proof beyond a reasonable doubt. *See People v. Robillard,* 55 Cal. 2d 88, 358 P.2d 295, 10 Cal. Rptr. 167, 83 A.L.R.2d 1086 (1960), *cert. denied,* 365 U.S. 886, 6 L. Ed. 2d 199, 81 S. Ct. 1043 (1961); *United States v. Eichberg,* 439 F.2d 620 (D.C. Cir. 1971). They contended below and on appeal that they are not guilty of the crime charged. Because of the serious nature of the charge against the parent and stepparent of a well-loved child, and out of our concern for the protection of the constitutional rights of the defendants, we have made an independent examination of the evidence to determine whether it substantially supports the court's express finding on proximate cause and its implied finding that the duty to furnish medical care became activated in time to prevent death of the child. *See State v. Moore,* 194 Ore. 232, 241 P.2d 455 (1952).

Dr. Gale Wilson, the autopsy surgeon and chief pathologist for the King County Coroner, testified that the child died because an abscessed tooth had been allowed to develop into an infection of the mouth and cheeks, eventually becoming gangrenous. This condition, accompanied by the child's inability to eat, brought about malnutrition, lowering the child's resistance and eventually producing pneumonia, causing the death. Dr. Wilson testified that in his opinion

the infection had lasted for approximately 2 weeks, and that the odor generally associated with gangrene would have been present for approximately 10 days before death. He also expressed the opinion that had medical care been first obtained in the last week before the baby's death, such care would have been obtained too late to have saved the baby's life. Accordingly, the baby's apparent condition between September 1 and September 5, 1968 became the critical period for the purpose of determining whether in the exercise of ordinary caution defendants should have provided medical care for the minor child.

The testimony concerning the child's apparent condition during the critical period is not crystal clear, but is sufficient to warrant the following statement of the matter. The defendant husband testified that he noticed the baby was sick about 2 weeks before the baby died. The defendant wife testified that she noticed the baby was ill about a week and a half or 2 weeks before the baby died. The evidence showed that in the critical period the baby was fussy; that he could not keep his food down; and that a cheek started swelling up. The swelling went up and down, but did not disappear. In that same period, the cheek turned "a bluish color like." The defendants, not realizing that the baby was as ill as it was or that the baby was in danger of dying, attempted to provide some relief to the baby by giving the baby aspirin during the critical period and continued to do so until the night before the baby died. The defendants thought the swelling would go down and were waiting for it to do so; and defendant husband testified, that from what he had heard, neither doctors nor dentists pull out a tooth "when it's all swollen up like that." There was an additional explanation for not calling a doctor given by each defendant. Defendant husband testified that "the way the cheek looked, . . . and that stuff on his hair, they would think we were neglecting him and take him away from us and not give him back." Defendant wife testified that the defendants were "waiting for the swelling to go down," and also that they were afraid to

take the child to a doctor for fear that the doctor would report them to the welfare department, who, in turn, would take the child away. "It's just that I was so scared of losing him." They testified that they had heard that the defendant husband's cousin lost a child that way. The evidence showed that the defendants did not understand the significance or seriousness of the baby's symptoms. However, there is no evidence that the defendants were physically or financially unable to obtain a doctor, or that they did not know an available doctor, or that the symptoms did not continue to be a matter of concern during the critical period. Indeed, the evidence shows that in April 1968 defendant husband had taken the child to a doctor for medical attention.

In our opinion, there is sufficient evidence from which the court could find, as it necessarily did, that applying the standard of ordinary caution, *i.e.*, the caution exercisable by a man of reasonable prudence under the same or similar conditions, defendants were sufficiently put on notice concerning the symptoms of the baby's illness and lack of improvement in the baby's apparent condition in the period from September 1 to September 5, 1968 to have required them to have obtained medical care for the child. The failure so to do in this case is ordinary or simple negligence, and such negligence is sufficient to support a conviction of statutory manslaughter.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.