[No. 33240. Department One. November 3, 1955.]

THE STATE OF WASHINGTON, *Respondent*, v. VIOLET MARIE SILL, *Appellant*.[1]

*Weyer & Gemson,* for appellant.

*Charles O. Carroll, Frank Harrington,* and *Murray B. Guterson,* for respondent.

[1]Reported in 289 P. (2d) 720.

SCHWELLENBACH, J.—This is an appeal from a judgment and sentence for manslaughter entered after a jury verdict.

Marion and Violet Sill were the operators of a tavern in Seattle. Sunday, July 11, 1954, they spent part of the day painting the tavern. That evening they had dinner with friends at the CPO Club. They appeared to be friendly and normal, did not quarrel, and danced together a couple of times. They left together about 10:10 p. m. At 10:35 p. m. the police department received a call concerning a shooting at 522 west Mercer. Officers in a prowl car immediately proceeded to that location. Mrs. Sill let them in and said, "He's over there," and pointed backward. Mr. Sill was lying at the head of the basement stairs. He had a wound in the front and on the lower left side of his neck and was bleeding profusely.

A shotgun was on the floor, as were seven shotgun shells, four spent and three unused. The gun was plugged so that no more than three shells could be in it at one time, making it necessary to reload after the third shot. A test showed that all of the shots were fired from the same gun. On the davenport there was blood and a tear which held wadding from a shotgun shell. There was a trail of blood from the davenport to a chair near the telephone. Pellets were lodged in the ceiling, as were small pieces of flesh and a few blood stains. There was a large pool of blood near where Mr. Sill was lying.

The officers testified that Mrs. Sill appeared calm; that they asked her if she did it and she said, "Yes"; that upon being asked why, she said, "He's been nagging me for weeks, and I couldn't stand any more." She stated that she had called the police. It was then noticed that she was holding her left side. She showed them the wound where the flesh was torn. She was asked if she had attempted to take her own life and she answered, "Yes." (She also had a wound in her upper left arm, about which she did not tell the officers.)

About seven minutes after the officers arrived, an ambulance came and took Mr. and Mrs. Sill to the hospital. Mr. Sill was pronounced dead on arrival.

Later that evening two detectives talked to Mrs. Sill at the hospital. Her statements were about the same as those given in the house. A couple of days later, while in custody, she refused, upon advice of counsel, to answer any questions.

Mrs. Sill was charged with second degree murder. She did not take the stand in her own defense. The ambulance driver testified that she appeared to be shaken when he arrived. Medical testimony was produced by the defense that anyone who had suffered wounds of the type she had would be in a tremendous emotional shock, and that the condition of her nerves would be upset.

Dr. Charles P. Larson, of Tacoma, a pathologist whose qualifications are unquestioned, testified at length for the defense. He spent many hours at the house and innumerable hours in his laboratory. He removed panels from the walls and ceilings and removed a portion of the davenport. He counted the pellets in the various panels. From the positions of the holes made by the pellets, he found the angles at which they had entered the panels and the ceilings, and thus deduced the directions which the shots took. He analyzed the blood, cloth, and particles of flesh found in the house.

In the bathroom, he found a cloth fiber identical in nature with the fiber in Mrs. Sill's jacket. In the bathtub, he found flesh, many shotgun pellets, a large piece of the exact material of the coat worn by Mrs. Sill, and her type blood.

He found material in the hole in the davenport where the shotgun wadding was found that was identical with the material in Mrs. Sill's coat. He could not identify the type of the blood found in the hole in the davenport. The blood on the pillow found on the davenport and on newspapers near it was Mr. Sill's type. Blood spots on the edge of the davenport were Mrs. Sill's type. He concluded that the shot entering the davenport went through the tissue of some individual; that it was shot from twelve to fifteen feet away from the davenport; that the gun must have been two to four inches from the individual; and that the shot traveled almost horizontally, but slightly downward.

He concluded that the shot which went into the bathroom was the one that went through the upper part of Mrs. Sill's arm and that it could have been self-inflicted.

He concluded that, as to the shot that hit the deceased and entered the ceiling, the butt of the gun must have been on the floor; the deceased must have been leaning over; the person shooting must have been on the floor; and that it was highly improbable that the wound was self-inflicted.

He found a grease smear on Mrs. Sill's jacket opposite the second buttonhole. He testified that this indicated that the end of the barrel of the gun (which had been previously fired) had been pressed against her, but was not fired.

He was unable to determine the sequence of the shots.

The jury found the defendant not guilty of second degree murder, but did find her guilty of manslaughter.

Appellant's principal assignments of error are, one, that there was insufficient evidence to justify submission of the case to the jury, and, two, that it was error to submit the question of manslaughter to the jury.

RCW 9.48.040 provides:

"The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—

"(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or

"(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030. . . ."

RCW 9.48.060 provides:

"In any case other than those specified in RCW 9.48.030, 9.48.040 and 9.48.050, homicide, not being excusable or justifiable, is manslaughter. . . ."

■ Where the killing of a human being is admitted, the killing is presumed to constitute the crime of murder in the second degree. The burden is on the defendant to justify his act, or reduce the charge to manslaughter. *State v. Gallagher*, 4 Wn. (2d) 437, 103 P. (2d) 1100, and cases cited.

■ Here we have the killing of Mr. Sill, the weapon, and the uncontradicted testimony that appellant admitted

the shooting. There was some testimony that she was too upset to realize what she was saying. It was for the jury to determine that question, and the particular issue was submitted under proper instructions. Dr. Larson's testimony raised a question as to whether or not the act was committed with intent to effect the death of the deceased. However, appellant admitted the shooting and stated why she had done it. The state was not relying on circumstances to prove its case, as appellant contends. It was relying on direct evidence. There was sufficient evidence to submit the question of appellant's guilt, as charged, to the jury.

▉ Appellant contends that there was no evidence to warrant the submission of the issue of manslaughter to the jury. A defendant may not be convicted of a lesser degree of crime which is included in a greater degree, unless there be evidence to sustain a conviction upon the minor degree. The inclusion of the lesser degree within the greater must be an inclusion in fact as well as one in law. *State v. Foley,* 174 Wash. 575, 25 P. (2d) 565. "Manslaughter" is the unintentional killing of a person without excuse or justification, by one committing an unlawful, but not a felonious, act. *State v. Turpin,* 158 Wash. 103, 290 Pac. 824. An accused's killing of a person by the use of more force than is necessary in attempting to expel the deceased from the accused's home, constitutes "manslaughter" in the absence of justification or excuse. *State v. Gallagher, supra.* One may be convicted of manslaughter if he causes the death of another by doing some act in a negligent manner, and gross negligence is not necessary to be shown. *State v. Ramser,* 17 Wn. (2d) 581, 136 P. (2d) 1013.

From all of the evidence in the case, submitted by both the state and the defendants, the jury could have found that appellant was the aggressor, or that she was acting in self-defense; that, if acting in self-defense, she used more force than was necessary, or, in so doing, she acted negligently. It is evident that there must have been quite a fracas in the house.

In *State v. Foley, supra,* after stating the rule that a defendant may not be convicted of a lesser degree of crime

unless there be evidence to sustain such a conviction upon the lesser degree, we said:

"That rule, however, has no reference to the weight of testimony, but has applicability only to those cases where there is *no* testimony whatever to weigh tending to show the commission of the lesser degree of crime.

"Conversely, it is also the rule that the lesser degree of crime must be submitted to the jury along with the greater degree, unless the evidence positively excludes any inference that the lesser crime was committed."

█ The testimony of Dr. Larson contained such evidence that it became the duty of the trial court to submit the question of manslaughter to the jury.

The judgment and sentence is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

December 22, 1955. Petition for rehearing denied.