THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
ROBERT ROBBINS, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
JEROME STEPHANSKI, Respondent.

Fourth Department, November 13, 1981

#### APPEARANCES OF COUNSEL

*Peter L. Broderick, District Attorney (Claude A. Joerg* of counsel), for appellant.

*R. Thomas Burgasser* for Robert Robbins, respondent.

*Richard H. Speranza, Public Defender (Leonard Tilney* of counsel), for Jerome Stephanski, respondent.

#### OPINION OF THE COURT

DENMAN, J.

We must determine whether criminal liability may be imposed upon a spouse for his failure to summon medical aid for his wife who subsequently dies. Under the circumstances presented here, we hold that it may not.

Pamela Robbins, a young woman of fragile health, had suffered from epilepsy and diabetes for many years. She required Phenobarbital and Dilantin to control her epilepsy and two daily injections of insulin for her diabetes. She had lapsed into diabetic coma on many occasions and her husband, defendant Robert Robbins, had often summoned an ambulance for her or taken her to an emergency room. Both Pamela and Robert Robbins were deeply religious "born again" Christians. They met defendant Jerry Stephanski, a self-professed minister, at a revival meeting. The Robbins joined a religious group founded and led by Stephanski at which he preached that if one had sufficient faith, God would cure all illnesses. The Robbins shared this belief. During a religious meeting Pamela apparently believed that she had a revelation that she was healed of epilepsy and she resolved to stop taking all medication. She discussed the divine origin of her revelation with Stephanski and her husband and they agreed that she should not continue with her medication. As a result, she had several seizures, became very weak and ill, and lapsed into diabetic coma from which she died. Robert Robbins was indicted for criminally negligent homicide (Penal Law, § 125.10) for failure to summon medical aid for his wife, and Stephanski was also charged with criminally negligent homicide as an accessory (Penal Law, § 20.00) for "counseling, urging, suggesting and directing" that Pamela Robbins refrain from taking insulin or seeking medical assistance. Defendants moved to dismiss the indictments for failure to state an offense (CPL 210.20, subd 1, par [a]; 210.25, subd 1). The motion was granted and the People appeal from the order of dismissal.

The People contend that Robert Robbins owed his wife, by virtue of their marital relationship, a legal duty of care which he breached by his failure to summon medical aid or administer insulin to his wife when she was incapacitated. Unquestionably there is a common-law marital duty to provide medical attention to one's spouse but we must examine when, and under what circumstances, the breach of such duty will result in criminal culpability.

In examining this issue, it is instructive to turn to our sister States which have had occasion to weigh the rele-

vant factors. In *Territory v Manton* (8 Mont 95), a husband was convicted of manslaughter for leaving his intoxicated wife lying unconscious in the snow overnight, resulting in her death from exposure. The court held that the husband had breached a legal duty to protect his wife. More recently, the Montana Supreme Court again had occasion to examine that principle in *State v Mally* (139 Mont 599). Defendant there left his wife, an alcoholic suffering from chronic hepatitis, terminal kidney disease and two fractured arms, in a bedroom for two days without seeking medical help. He finally summoned a doctor but the wife died in the hospital. The court upheld the husband's conviction and ruled that the marital duty to provide medical treatment arises when the spouse, although an adult, is helpless and unable to request or reject aid for herself. When a case involving involuntary manslaughter for breach of the spousal duty reached the Montana Supreme Court for the third time, the court found evidence of culpable negligence to be lacking *(State v Decker,* 157 Mont 361). Both husband and wife were heavy drinkers and it was not unusual for the wife to pass out from overindulgence. On this occasion she passed out and her husband put her in bed, left her undisturbed during the next day and went out for the evening. Upon his return, he found her on the floor but merely put her back in bed. He summoned aid the next day, but his wife died of a subdural hematoma.

Various other jurisdictions have imposed criminal liability on a spouse for breach of a duty of care. In *State v Smith* (65 Me 257) the court upheld a conviction of manslaughter where the husband confined his wife, who was both insane and crippled, to an unheated, drafty room where she died of exposure. In *Nelson v State* (58 Ga App 243) the wife was an alcoholic with a chronic kidney disease aggravated by her husband's beatings. After administering a beating, the husband summoned a faith healer but rejected his advice to call a doctor. The Georgia Court of Appeals held that he could not be convicted of voluntary manslaughter for his failure to summon aid, although he might have been convicted of involuntary manslaughter (58 Ga App 243, 246). In *Westrup v Commonwealth* (123 Ky 95) the Kentucky Supreme Court ruled that a charge of involuntary

manslaughter could be predicated on a husband's breach of duty to provide his wife with medical attention, but declined to do so on the facts before it. There the wife believed in natural childbirth and refused all medication and medical care. After giving birth to a child, she deteriorated rapidly and her husband called a doctor. When the doctor arrived, he discovered that she was hemorrhaging but she continued to refuse treatment or medication and subsequently died. In declining to impose criminal responsibility, the court emphasized that the husband had acted in accordance with his wife's wishes *(Westrup v Commonwealth, supra,* pp 100-101).

An English Court of Criminal Appeal upheld a husband's conviction of manslaughter for the neglect of his wife, ruling that although a husband cannot be held criminally liable for the death of a competent adult spouse who exercises her free will to refuse medical aid, such rule does not apply where the evidence shows that the wife is in a helpless condition and unable to make a rational decision *(Rex v Bonnyman,* 28 Crim App R 131). The common thread in this catalog of cases is that the courts have not hesitated to impose criminal liability when a decedent spouse was in a helpless condition obviating the exercise of free will or the ability to make a rational choice to refuse medical care.

The People urge us to follow the Superior Court of Pennsylvania in *Commonwealth v Konz* (265 Pa Super Ct 570) which reinstated the conviction of a wife for involuntary manslaughter arising from the death of her diabetic husband from insulin withdrawal where he had made a conscious decision to cease taking insulin on religious grounds. We believe, however, that the *Konz* case is factually distinguishable from the case before us. Reverend David Konz, like Pamela Robbins, decided to withdraw from insulin and rely on his faith that God would heal him. Unlike Pamela, however, Reverend Konz assured others that he would resume taking insulin if he thought his condition warranted it. When he began exhibiting symptoms of insulin debt and went to the refrigerator to get his insulin, he discovered that his wife had hidden it. When he attempted to leave the house, his departure was blocked by

defendant Stephen Erikson, a friend whose aid had been enlisted to help him resist temptation. Erikson physically forced him into his bedroom and held him captive while he and Mrs. Konz talked to him. When Konz attempted to make a telephone call, Erikson and the wife disconnected the telephone. Thus there are two factors present in *Konz* which do not appear in the facts before us — overt acts by the defendants and evidence of duress. It is thus clear that the convictions of Mrs. Konz and Erikson are supported by evidence of overt acts rather than mere omission.

It would be an unwarranted extension of the spousal duty of care to impose criminal liability for failure to summon medical aid for a competent adult spouse who has made a rational decision to eschew medical assistance. In New York such a rationale would be in direct conflict with the related rule that a competent adult has a right to determine whether or not to undergo medical treatment *(Matter of Storar,* 52 NY2d 363; *Schloendorff v Society of N.Y. Hosp.,* 211 NY 125). There is no basis under New York law for denying an adult the right to refuse medical care where such refusal does not pose a threat to the life or health of others. "In this State, however, there is no statute which prohibits a patient from declining necessary medical treatment or a doctor from honoring the patient's decision. To the extent that existing statutory and decisional law manifests the State's interest on this subject, they consistently support the right of the competent adult to make his own decision by imposing civil liability on those who perform medical treatment without consent, although the treatment may be beneficial or even necessary to preserve the patient's life (see, e.g., *Schloendorff v Society of N.Y. Hosp.,* 211 NY 125, *supra; Matter of Erickson v Dilgard,* 44 Misc 2d 27; *Matter of Melideo,* 88 Misc 2d 974; Public Health Law, §§ 2504, 2805-d; CPLR 4401-a). The current law identifies the patient's right to determine the course of his own medical treatment as paramount to what might otherwise be the doctor's obligation to provide needed medical care. A State which imposes civil liability on a doctor if he violates the patient's right cannot also hold him criminally responsible if he respects that right." *(Matter of Storar,* 52 NY2d 363, 377, *supra.)*

A construction of the law which would give Pamela Robbins the right to decline medical aid and would impose civil liability on anyone who subjected her to treatment without her consent, but at the same time would impose criminal sanctions on her husband if he respected that right of refusal, is not only paradoxical, but totally irrational and fundamentally unfair. Although the indictment against Robert Robbins alleges that he failed to seek medical aid "at a time when the said Pamela Robbins was unable to provide or seek the same for herself," it is defective for failure to state that Pamela Robbins was incapacitated or otherwise unable to make a rational decision and indeed the evidence would not support such claim. The record indicates, rather, that up until a very short time before her death, Pamela and Robert Robbins were praying, he was attempting to ease her discomfort, and was behaving in a very solicitous manner. The failure of medical assistance which resulted in her death was unquestionably the consequence of Pamela Robbins' conscious choice to rely on her faith and forego medical interference.

With respect to Jerome Stephanski the indictment charged that he "caused the death of Pamela Robbins by counseling, urging, suggesting and directing" that Pamela Robbins withdraw from insulin. The People concede, however, that "counseling, urging," etc., is not an act which would support liability for criminally negligent homicide and that his liability is merely derivative to that of Robert Robbins. Inasmuch as we find that the indictment against Robert Robbins was properly dismissed, there is no basis for imposing predicate liability on Stephanski.

CALLAHAN, DOERR and MOULE, JJ., concur; CARDAMONE, J. P., not participating.

Orders unanimously affirmed.