450 A.2d 638

COMMONWEALTH of Pennsylvania, Appellee,

v.

Dorothy A. KONZ, Defendant-Appellant,

**and**

Stephen R. C. Erikson, Defendant-Appellant.

Supreme Court of Pennsylvania.

Argued April 15, 1982.

Decided Sept. 13, 1982.

640

Thomas A. Wallitsch, Public Defender, James T. Huber, Carol K. McGinley, Asst. Public Defenders, George A. Hahalis, Bethlehem, for defendant-appellant.

William Platt, Dist. Atty., Henry S. Perkin, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court[1] which reversed a decision of the Court of Common Pleas of the Thirty-First Judicial District granting a Motion in Arrest of Judgment to the appellants, Dorothy A. Konz and Stephen R. C. Erikson, subsequent to their being found guilty of involuntary manslaughter in a trial by jury. The prosecution of Dorothy Konz arose from her failure to comply with an alleged duty to seek medical assistance for Reverend David G. Konz, her husband, when he was stricken with a diabetic crisis which proved fatal. The prosecution of Erikson rested upon his alleged role as an accomplice in that breach of duty.

1. *Commonwealth v. Konz*, 265 Pa.Super. 570, 402 A.2d 692 (1979).

Viewed in the light most favorable to the Commonwealth, as verdict winner, the following facts were established at trial. In September, 1973, Reverend Konz, while serving as a teacher, counselor, and chaplain at United Wesleyan College, became acquainted with Erikson, a student at the College. A close friendship, based on their common interest in religion, formed between Erikson and Reverend Konz as the former became a regular visitor at the latter's residence.

Reverend Konz was a thirty-four year old diabetic and had, for seventeen years, administered to himself daily doses of insulin. On March 4, 1974, however, following an encounter on campus with a visiting evangelist speaker, Reverend Konz publicly proclaimed his desire to discontinue insulin treatment in reliance on the belief that God would heal the diabetic condition. He assured the president of the College and members of the student body that he would carefully monitor his condition and would, if necessary, take insulin. On only one or two occasions did the Reverend thereafter administer insulin. On March 18, 1974, however, Erikson and Reverend Konz formed a pact to pray together to enable the latter to resist the temptation to administer insulin.

Mrs. Konz was informed of the prayer pact, and, on the morning of Saturday, March 23, 1974, when her husband evidenced symptoms of insulin debt, she removed his insulin from the refrigerator and concealed it.[2] Later that day, the Reverend attempted to obtain insulin from the refrigerator, and, upon discovering that the medicine had been removed, strongly indicated that it should be returned. He then attempted to proceed from room to room but his passage was blocked by Erikson. Harsh words were exchanged, and Erikson, after kneeling in prayer, forced the Reverend into a bedroom where, accompanied by Mrs. Konz, Erikson and the Reverend conversed for approximately one half hour. During that time, the Reverend tried to telephone police to obtain assistance but was prevented from doing so by Erikson and Mrs. Konz, who, during a struggle with the Rever-

2. The insulin was returned to the refrigerator sometime prior to Sunday night.

end, rendered at least that telephone permanently inoperable.[3] Immediately after this confrontation, the Reverend, his wife, and Erikson returned amicably to the kitchen for coffee, and no further request for insulin was ever made. In addition, the Reverend approached his aunt who resided in the same household and stated, in an apparent reference to the preceding confrontation with Erikson, that "It's all settled now," and told her that there was no cause for concern. He also told his eleven year old daughter that "Everything is fine," and indicated to her that he did not intend to take insulin. The Reverend then departed from the house, accompanied by Erikson, and returned an hour later. As the day progressed, Reverend Konz cancelled his speaking commitment for the following day and drove his wife to an institution having hospital facilities to pick up a close friend who was a practical nurse. Late on Saturday night, while waiting inside the institution for the nurse to complete her duties, the Reverend appeared very fatigued and complained that he was developing an upset stomach. Both of these conditions were symptomatic of lack of insulin, but neither the Reverend nor his wife requested that insulin, which was available at the institution, be administered. With regard to the Reverend's condition at that time, the nurse observed that he travelled with unimpaired mobility, and that he was conversant, rational, and cognizant of his environs. Nevertheless, he made no mention of a need for insulin, and the nurse made no inquiry as to such a need because the Reverend had on a previous day become very upset at her inquiry as to his diabetic condition.

Upon returning home from this errand, Reverend Konz experienced increasing illness, vomiting intermittently Saturday night and Sunday morning, and remained in bed all day Sunday except for trips into the bathroom. On Sunday afternoon visitors arrived at the Konz residence. The Reverend, recognizing their voices, called to them from his room to inquire whether they wished to see him; having

3. There was testimony as to the existence of two telephones in the residence.

been informed of the Reverend's nausea, however, the visitors declined to stay. As the Reverend's condition worsened and he became restless, his wife and Erikson administered cracked ice but did not summon medical aid. The Konz's eleven year old daughter then inquired as to why a doctor had not been summoned but Mrs. Konz responded that her husband was "going to be getting better." Late Sunday night or early Monday morning everyone in the household fell asleep. On Monday morning at approximately 6 AM, while the others were still asleep, Reverend Konz died of diabetic ketoacidosis.

Appellants were found guilty by a jury of the crime of involuntary manslaughter pursuant to Section 2504 of the Pennsylvania Crimes Code, which provides: "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504. To impose criminal liability for an omission as opposed to an act, the omission must be "expressly made sufficient by the law defining the offense." 18 Pa.C.S.A. § 301(b)(1), or "a duty to perform the omitted act [must be] otherwise imposed by law." 18 Pa.C.S.A. § 301(b)(2). Since the involuntary manslaughter provision of the Crimes Code does not expressly address omissions as a basis for liability, only 18 Pa.C.S.A. § 301(b)(2) has potential applicability. The determinative issue on appeal, therefore, is whether Mrs. Konz had a duty to seek medical attention for her spouse. Under the circumstances of this case, we find no such duty to have been present; hence, the conviction of Mrs. Konz, and that of Erikson as her accomplice, cannot be sustained.[4]

■ Courts have, in limited circumstances, departed from the longstanding common law rule that one human being is

---

4. In view of our disposition on the issue of duty, appellants' allegations of trial error, as well as a challenge by appellant Erikson to the applicability of the accomplice theory of culpability to the crime of involuntary manslaughter, need not be addressed.

under no *legal* compulsion to take action to aid another human being. One such circumstance is where there exists a requisite status of relationship between the parties, as is present in the relationship of parent to child. Hence, a parent has been held guilty of involuntary manslaughter for failure to seek medical assistance for his sick child. *Commonwealth v. Breth,* 44 Pa.C. 56 (1915); *Commonwealth v. Hoffman,* 29 Pa.C. 65 (1903). See also *Commonwealth v. Comber,* 170 Pa.Super. 466, 469, 87 A.2d 90, 93 (1952) (dicta), rev'd on other grounds, 374 Pa. 570, 97 A.2d 343 (1953). The inherent dependency of a child upon his parent to obtain medical aid, i.e., the incapacity of a child to evaluate his condition and summon aid by himself, supports imposition of such a duty upon the parent.

The Commonwealth argues that the marital relationship gives rise to a similar duty to aid one's spouse. Spouses, however, do not generally suffer the same incapacity as do children with respect to the ability to comprehend their states of health and obtain medical assistance. We reject, therefore, the holding of the Superior Court that the marital relationship gives rise to an unrestricted duty for one spouse to summon medical aid whenever the other is in a serious or immediate need of medical attention. Recognition of such a duty would place lay persons in peril of criminal prosecution while compelling them to medically diagnose the seriousness of their spouses' illnesses and injuries. In addition, it would impose an obligation for a spouse to take action at a time when the stricken individual competently chooses *not* to receive assistance. The marital relationship gives rise to an expectation of reliance between spouses, and to a belief that one's spouse should be trusted to respect, rather than ignore, one's expressed preferences. That expectation would be frustrated by imposition of a broad duty to seek aid, since one's spouse would then be forced to ignore the expectation that the preference to forego assistance will be honored.

Since there is no precedent in this Commonwealth addressing the existence of the particular spousal duty in question, it is to be noted that certain other jurisdictions

have regarded the marital relationship as sufficient, in itself, to invoke a limited duty for one spouse to seek medical care for the other. In *Westrup v. Commonwealth,* 123 Ky. 95, 93 S.W. 646 (1906), the defendant's pregnant wife insisted that she did not want medical aid for the birth of their child. Soon after giving birth, however, she suffered complications; the defendant then summoned a physician, but the physician was unable, at that point, to prevent the wife's death. Finding that the defendant had acted in good faith and at his wife's competent request in not obtaining aid sooner, the court found no breach of duty to the wife. Reversing the conviction, the court stated:

> Where the husband neglects to provide necessaries for his wife, or medical attention in case of her illness, he will be guilty of involuntary manslaughter, provided it appears that she was in a *helpless state and unable to appeal elsewhere for aid,* and that the death, though not intended nor anticipated by him, was the natural and reasonable consequence of his negligence.

Id. at 97, 93 S.W. at 646 (emphasis added). Hence, prior to his wife's lapsing into an unexpected and helpless condition, the defendant was not obliged to override the mature, conscious, and rational decision of his wife to forego assistance.

A limited spousal duty was similarly recognized in *State v. Mally,* 139 Mont. 599, 366 P.2d 868 (1961), wherein the defendant's wife was in poor physical condition prior to the occurrence of an accident in which both of her arms were fractured. After the accident, defendant allowed his wife to lay in a semi-comatose condition while she decried the need for aid for two days before he summoned a physician, and this delay caused her death. Affirming defendant's involuntary manslaughter conviction, the court stated:

> We are aware that the large majority of homicide cases involving a failure to provide medical aid involve a parent-child relationship. This is undoubtedly due to the fact that a person of mature years is not generally in a helpless condition. However, fact situations do arise, such as the

instant case, wherein it is apparent *that an adult is as helpless as the newborn.* The record is replete with evidence that [decedent] could not have *consciously or rationally denied medical aid.*

Id. at 609, 366 P.2d at 873 (emphasis added.)

Unlike the foregoing cases, however, the instant case is not one wherein there is evidence of the stricken spouse having unintentionally entered a helpless state, or of having been less than competent to consciously and rationally deny medical aid. Rather, the record supports only the conclusion that subsequent to the incident on Saturday, March 23, 1974, when Reverend Konz was briefly restrained in a bedroom by Erikson, the Reverend was in such mental condition as to fairly understand and appreciate his situation and had ample opportunity to request assistance but chose, instead, to forgo medical treatment. Hence, assuming that one spouse owes the other a duty to seek aid when the latter is unwillingly rendered incompetent to evaluate the need for aid, or helpless to obtain it, that duty would not have been breached under the facts presented.[5]

**5.** The dissenting opinion of Mr. Justice McDermott states that Reverend Konz's "last visit to the world was to take his daughter shopping for shoes" and that appellants then "purposely isolated him and denied him access to help." This assertion is completely unsupported by the record and ignores the crucial and uncontroverted fact that, *subsequent* to that shopping trip, and *subsequent* to the incident where appellants restrained Reverend Konz from taking insulin, he drove his wife to a hospital facility where he could easily have obtained insulin and where he remained for some time without ever requesting medical assistance. This fact formed the basis of the trial court's granting of appellants' motions in arrest of judgment and, along with other uncontroverted evidence of record ignored by the dissenting opinion of Mr. Justice McDermott, compels our reinstatement of the trial court's judgments of acquittal.

The opinion of the court of common pleas en banc was written by the judge who presided at trial and heard all the evidence presented. After recounting the facts and reasonable inferences to be drawn therefrom in the light most favorable to the Commonwealth as verdict winner, that opinion states:

The acts of the defendants on Saturday afternoon in keeping the decedent from his insulin and preventing him from calling the police were, we believe, substantial factors which resulted in the jury returning a guilty verdict. However, reprehensible as they may be, these acts could not be the cause of Reverend Konz's

*Subsequent* to being restrained by Erikson in a bedroom for one half hour on the Saturday preceding his death, Reverend Konz elected on numerous occasions not to obtain insulin. The record does not support the inference raised by the Superior Court that the Reverend was, against his will, and until his death, continuously held incommunicado as an isolated captive of Erikson and Mrs. Konz while being denied the opportunity to secure medical assistance.

After announcing that the confrontation with Erikson was "settled," Reverend Konz could easily have addressed a request for insulin to his aunt, to his daughter, to the clergyman to whom he spoke to cancel a speaking engagement for Sunday, to persons at the hospital facility to which he drove Saturday night, to the nurse with whom he conversed late Saturday night, or to visitors at his home on Sunday. The Reverend not only remained silent as to a desire for insulin, however, but even took the initiative to

death, since the reverend had ample opportunity to obtain medical assistance when he went to Cedarbrook [the county nursing home, which had hospital facilities] that night. Since, from the medical testimony presented, there can be little doubt that medical aid on Saturday night would have saved his life, criminal liability cannot attach to the Defendants's actions on Saturday. [citation omitted].

\* \* \* \* \* \*

It cannot be said that the Defendants were responsible for the decedent's diabetes. It is also clear from the evidence that the decision to withdraw from insulin was made by the decedent alone. While the Defendants encouraged Reverend Konz to abide by his decision, there is no evidence of any physical coercion by the Defendants after [Saturday,] March 23, 1974. There is no evidence of any request for insulin or medical assistance by decedent after that date. This is a situation where the decedent was attempting to cure himself by faith and prayer and the defendants honored his wishes in this matter.

\* \* \* \* \* \*

In summary, the Commonwealth has failed to prove that the decedent was not physically or mentally capable of summoning medical aid or expressing his desire that others summon medical aid for him. The Commonwealth has failed to prove that decedent made such a request after Saturday afternoon and that the defendants ignored this request.

Since the Commonwealth has failed to present sufficient evidence to show the existence of a legal duty or that the defendants' omission to act was the cause of the decedent's death, the defendants' motion [in arrest of judgment] must be granted.

reassure his aunt and daughter that there was no cause for concern. This course of behavior is inconsistent with any conclusion other than that the Reverend, by Saturday evening, had become firmly resolved to abstain from the administration of insulin. Had the Reverend been dissatisfied with his treatment, as a diabetic would be in the event of being forcibly denied insulin, he presumably would have attempted to obtain the medication or to call his dissatisfaction to the attention of persons with whom he came in contact. Yet, the record is devoid of any evidence that such an effort was made. Nor can the Reverend's acquiescence be attributed to a lack of mental competency to comprehend and militate against his plight. The testimony of the nurse with whom the Reverend conversed on Saturday night, as well as the Reverend's reaction to the presence of visitors in his home on Sunday, indicate clearly that the Reverend was in an alert and rational condition. Hence, the conclusion is inescapable that Reverend Konz, having been a diabetic for seventeen years, was aware of the importance of insulin to the preservation of his life but competently chose to forego treatment. Under this circumstance, we find no breach of duty to have been incurred by Mrs. Konz in her failure to seek medical aid for her husband.[6]

Order reversed and appellants discharged.

NIX, J., files a concurring opinion.

McDERMOTT, J., files a dissenting opinion in which LARSEN, J., joins.

6. We note our disagreement with that portion of the dissenting opinion of Mr. Justice McDermott which asserts that the issue of appellants' legal culpability was "put squarely before the jury." The dissent relies exclusively upon an isolated excerpt from the trial court's lengthy charge to the jury, where the court instructed that if Reverend Konz had chosen to refuse the taking of insulin, appellants were entitled to a verdict of not guilty. However, the dissent fails to mention that the trial court gave numerous additional instructions which would have permitted the jury to return verdicts of guilty notwithstanding Reverend Konz's rational decision to abstain from seeking medical assistance.

NIX, Justice, concurring.

This case raises the possibility of criminal liability as to both defendants as a consequence of their affirmative acts of Saturday, March 23, 1974. As to Mrs. Konz, it also raises the question of possible criminal liability for her *failure to act* between the events of Saturday evening and Monday morning (when Rev. Konz died) in view of the relationship she shared with the decedent. For the reasons that follow, I am satisfied the instant record does not support criminal liability under either theory.

In this appeal there is no causal connection between the acts of appellants and the death of Rev. Konz. The record is clear that the appellants' prevention of the decedent's attempt to administer insulin on Saturday was in no way causally connected with the death on Monday morning. Subsequent to the events of Saturday, the Reverend had numerous opportunities to seek help if he wanted an insulin injection. His conscious decision to continue to forego insulin after the events of Saturday constituted an intervening, superseding cause, thus cutting off any connection between appellants' affirmative actions on Saturday and Rev. Konz's death on Monday.

The more difficult question presented is whether there is a duty upon a spouse to seek medical aid for the other partner in contravention of the conscious decision of the ill spouse. The majority correctly notes that this is not a situation where one spouse is unable, because of a weakened condition, "to evaluate the need for [medical] aid, or helpless to obtain it, . . . ." [1]

Without determining whether a healthy spouse has to seek medical aid for a physically infirm spouse in spite of the conscious choice of the ill spouse, it is clear that if such a duty were required it could not be operative in this case. The knowledge requisite to show criminal responsibility for failure to act must include knowledge of the risk of danger

[1] Since such is not presented here, there is no need to consider the duty of the surviving spouse in that situation. Therefore, I decline to do so.

or life. Since the wife here had no superior knowledge of medicine and apparently shared her husband's religious views, the knowledge essential to the establishment of an affirmative duty is lacking and the requisite mental state does not exist.[2]

Thus, I concur in the result.

McDERMOTT, Justice, dissenting.

I dissent from the Court's decision, which disregards the jury's verdict, as well as our own maxim that, upon appeal, the evidence adduced at trial must be viewed in the light most favorable to the verdict winner. *See Commonwealth v. Yost,* 478 Pa. 327, 386 A.2d 956, 958–59 (1978); *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975); *Commonwealth v. Robson,* 461 Pa. 615, 625, 337 A.2d 573, 578 (1975).

The Reverend David Konz, the deceased in this case, was an ordained minister. His ministry was in the academic world: professor, chaplin and counselor at the United Weselyan College. He lived with his wife, appellant Dorothy Konz, and five children in West Bethlehem, Pennsylvania. While in the Marine Corps, he discovered he was a diabetic and for seventeen of his thirty-seven years he required quotidian injections of insulin.

In early March of 1974, Reverend Konz attended an evangelical prayer meeting. At that meeting, he was inspired to believe that his long standing burden of diabetes was lifted. On March 4, 1974, Reverend Konz proclaimed in church his desire to withdraw from insulin and trust in the efficacy of his faith to heal his diabetes.

His academic and religious confreres reminded him of the wisdom that God works through His creation; that Heaven cannot be stormed, God tempted, nor His will substituted. Reverend Konz later assured the president of the college,

**2.** I reject the broad proposition, suggested by the majority, that a conscious decision of an ailing spouse to forego medical help would relieve the surviving spouse in all situations of the obligation to procure help.

members of the student body and others that he would do nothing foolish, would carefully monitor his condition, and would take insulin, if warranted, during the withdrawal period.

For about three weeks, he put his faith to test and took insulin only once or twice. On March 18, 1974, Reverend Konz and appellant Stephen Erikson, a frequent visitor in the Konz home, made a pact to pray together to enable the decedent to resist the temptation to administer insulin to himself.

At the end of March, the crisis came. Reverend Konz' symptoms escalated, his resolve yielded and he sought the medicine. It is then that this case took its bizarre twist. Appellants, his companions in prayer, denied him the insulin by removing it from the refrigerator and hiding it. They forced him physically into his bedroom and deliberately ripped out the phone so that he could not call the police, as he threatened, or summon other help. The r made him the unwilling prisoner of the resolve he had ab idoned. Appellants' determination, *their* faith and *their* hope were substituted for his. From the evidence as accepted by the jury, there can be no question that appellants recklessly sacrificed the life of David Konz for *their* belief. They purposely isolated him and denied him access to help; they watched and ministered to his last extremity and brought ice packs to tide him over the gap between *their* faith and the miracle. He had pain and vomited. Visitors were told simply that he was resting. Wherever he went, one of the appellants went also. Help, but a needle point away, was discouraged and denied. His eleven year-old daughter, a witness to his forceable imprisonment, asked why a physician was not summoned. Reverend Konz died at 6:00 a. m. on Monday, March 25, 1974, the victim of a ruthless, reckless determination that he be cured.[1]

1. Although Dorothy Konz was aware of her husband's death as early as 7:30 a. m. Monday, she did not attempt to notify the authorities until 5:00 p. m.

The majority has adopted the view that Reverend Konz died because he wanted to; that this careful father of five children, whose last visit to the world was to take his daughter shopping for shoes, simply died for a blessing he knew had failed. Unless the rule that the verdict-winner is entitled to all favorable inferences has meaning only in weariness or whim, the verdict of the jury in this case must be sustained. The jury resolved against appellants all the inferences now adopted in appellants' favor by the majority.[2] They saw and heard all the evidence and, under an appropriate and lawful charge by the trial court, they found appellants guilty of involuntary manslaughter, as set forth in Section 2504 of the Crimes Code:

> A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504. I believe that, on the evidence recited above, the jury could properly have found that the affirmative actions of appellants in purposely depriving Reverend Konz of his life-sustaining insulin, in violently restraining his attempts to obtain assistance, and in deliberately isolating him from others from whom he might have sought aid satisfies the factual requirements of Section 2504.[3] The jury was certainly not obliged to view the situation as the majority chooses to frame it, i.e., that there could be no "conclusion other than that the Reverend . . . became firmly resolved to

2. *See Commonwealth v. Yost,* 478 Pa. 327, 332, 386 A.2d 956, 958–59 (1978); *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975); *Commonwealth v. Robson,* 461 Pa. 615, 625, 337 A.2d 573, 578 (1975).

3. Until today, it was well-settled that the jury is entitled to believe all, part or none of the evidence presented to it. *Commonwealth v. Tyler,* 495 Pa. 662, 435 A.2d 1212 (1981); *Commonwealth v. Brown,* 491 Pa. 507, 421 A.2d 660 (1980); *Commonwealth v. Simmons,* 482 Pa. 496, 394 A.2d 431 (1978); *Commonwealth v. Rose,* 463 Pa. 264, 344 A.2d 824 (1975); *Commonwealth v. Williams,* 450 Pa. 158, 299 A.2d 643 (1973).

abstain from the administration of insulin," regardless of the consequences. At 643.[4]

The majority's "inescapable" conclusion is rendered all the more astonishing in light of the charge of the trial judge, who put the issue squarely before the jury:

In this regard it is the law that a rational person has a right to refuse medical treatment, and he has a right to refuse it for any reason whatsoever, and that includes religious convictions. *If Reverend Konz did refuse treatment or did not want treatment and refused the taking of insulin and that this was his choice, the defendants are clearly entitled to a verdict of not guilty.* And on this point I charge you *it is incumbent upon the Commonwealth to prove beyond a reasonable doubt that Reverend Konz did so refuse* . . . .

Notes of Testimony at 460–61 (emphasis supplied). The jury's verdict demonstrates without a doubt that it did not credit the proposition, upon which the majority relies, that Reverend Konz chose to forgo insulin and medical treatment. This court is in no position to second-guess the fact-finder on such a clear issue of fact.[5]

It does not matter what the relationship between appellants and decedent may have been, spouse or friend, in the real world beyond the situation precipitating the crisis which cost Reverend Konz his life. What appellants' duties might be under different circumstances or in another context is not relevant. Appellants created their own circumstances and context and lived them out in a reckless, even ruthless, fashion. They did not simply stand by while Reverend Konz

**4.** The majority draws its "inescapable" conclusion that Reverend Konz chose "to forgo treatment" from thin air. *See* At 643. There is nothing whatsoever in the record to suggest that Reverend Konz stopped taking insulin in order to end his life, or even that he preferred death to life as a diabetic. In fact, the evidence is strongly to the contrary.

**5.** There appears to be no indication that the jurors failed to understand the trial court's instructions or that they did not properly perform their duty. The majority's decision to substitute its own version of the facts for the jury's is utterly unwarranted.

expired.[6] Despite the majority's creative re-interpretation of the facts, the record shows deliberate steps taken by appellants to keep from Reverend Konz the vital substance which he *needed and wanted* to save his life. The jury, having been carefully instructed as to the elements of involuntary manslaughter, properly could have found on this record that appellants' actions were reckless or grossly negligent and that they directly caused Reverend Konz' death. No more is required to sustain a conviction under Section 2504.[7]

I would affirm the order of the Superior Court, reinstating the jury's verdict.

LARSEN, J., joins in this dissenting opinion.

6. The jury's verdict shows that we are not presented here with a case concerning the right to die or euthanasia or "mercy-killing," in which appellants simply acquiesced in Reverend Konz' decision to die. Nor is this a situation in which appellants merely failed to seek medical assistance for the deceased. The jury faced these issues squarely and resolved them against appellants.

7. Indeed, in less charitable hands the charge might have risen higher than involuntary manslaughter.