People v Sanford (2004 NY Slip Op 24138)

People v Sanford

2004 NY Slip Op 24138 [4 Misc 3d 180]

April 28, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 4, 2004

[*1]
The People of the State of New York, Plaintiff,
v
Paula Sanford, Defendant.
Supreme Court, Kings County, April 28, 2004

APPEARANCES OF COUNSEL

Renfroe & Quinn, Forest Hills (Christopher Renfroe of counsel), for defendant. Charles J. Hynes, District Attorney, Brooklyn (Arlene Markarian of counsel), for plaintiff.

{**4 Misc 3d at 180} OPINION OF THE COURT

Matthew D'Emic, J.

{**4 Misc 3d at 181}Procedure

Defendant is charged with manslaughter in the second degree, criminally negligent homicide, reckless endangerment in the first degree, reckless endangerment in the second degree, and assault in the third degree. The charges stem from the death of defendant's mother, Clarise Gray, on September 16, 2003. Defendant moves to dismiss the indictment pursuant to Criminal Procedure Law § 210.20 (1) (b) in that the evidence presented to the grand jury was not legally sufficient to establish the offenses charged or any lesser included offense.

Evidence Before Grand Jury

In this case, the evidence before the grand jury consisted of the medical examiner's testimony that Ms. Gray died of blunt impact injuries to the torso consistent with a fall down a flight of stairs and the testimony of the investigating detective as to a statement made to him by Ms. Sanford.
Ms. Sanford initially told the detective she arrived home to find her mother unconscious. Several days later she changed her account, stating that her mother began arguing and cursing at her as she fed her mother's cat. Ms. Gray was wagging her finger at the defendant, who grabbed at it. Ms. Gray pulled her hand away causing her to lose her balance and fall down a flight of stairs. Defendant went down to help her mother, but her mother, in a kneeling position, as if to get up, told her daughter to leave her alone and get out. Defendant left to run errands at about 3:00 p.m., returning five hours later to find her mother dead at the bottom of the stairs. The time of death was estimated at 4:00-5:00 p.m. Based on this evidence, the grand jury returned a true bill on all counts.
Defendant's motion to dismiss this indictment must be denied if the evidence presented to the grand jury, viewed most favorably to the People, without benefit of explanation, contradiction or clarification, would warrant conviction by a jury (People v Galatro, 84 NY2d 160 [1994]; People v Jennings, 69 NY2d 103 [1986]). Put another way, if the evidence on its face establishes every element of the charged offenses, the indictment must survive (People v Smith, 213 AD2d 1073 [1995]).

Legal Analysis

In this case, both sides agree on the facts and that the only evidence against the defendant is her statement to the police. The People contend that by grabbing at her mother's finger at the {**4 Misc 3d at 182}top of a staircase she committed a criminally reckless act which was compounded by her failure to render assistance. The defense contends that no criminal liability can attach to the daughter's actions.
Under the definition of both recklessness and criminal negligence, essential elements of the crimes charged in this indictment, there must exist prima facie proof that Ms. Sanford perceived and ignored, or just did not perceive "a substantial and unjustifiable risk" that death or injury would ensue from her conduct, and that such ignorance or short-sightedness was grossly deviant (see Penal Law § 15.05 [3], [4]).
In order for criminality to attach to the defendant's conduct in grabbing her mother's finger and failing to get her help, it must be found so transparently and substantially risky as to be utterly abnormal when compared to ordinary behavior. For criminality cannot be imposed unless the risk created and disregarded would be apparent to anyone who shares the community's general sense of right and wrong (People v Ricardo B., 73 NY2d 228 [1989]).
In deciding whether a crime was committed, case law is instructive. The Court of Appeals has narrowed the inquiry in cases of reckless manslaughter and criminally negligent homicide, stating that some culpable "risk creation" is essential. That is, unless a defendant engages in blameworthy conduct creating a substantial risk of death, no crime has occurred (People v Boutin, 75 NY2d 692 [1990]). Other appellate courts have utilized this standard in making a legal determination on the peculiar facts of each case. For example, in People v Graham (122 AD2d 345 [1986]), forcefully throwing an intoxicated victim out of a bar in close proximity to a flight of stairs was found sufficient to create a substantial and unjustifiable risk of death sustaining a finding of criminal negligence. On the other hand, in People v Erby (97 AD2d 380 [1983]), the Court found that punching a victim causing him to fall, hit his head and die was insufficient. Likewise, in People v Johnson (131 AD2d 697 [1987]), where roughhousing involving choking resulted in death. As the Court stated in People v Erby (supra): "That there was a risk is obvious from the fact that a death occurred, but it was not 'of such a nature and degree' that a reasonable person would be under a duty to perceive it."
Using these cases as a guide, the court finds even less culpability in the case before it. There was no act of violence, nor was there an act of patent indifference. Rather, this case involves a not {**4 Misc 3d at 183}uncommon dispute between relatives that escalated into a split-second expression of frustration. It is clear that neither Ms. Sanford nor Ms. Gray knew nor could be expected to know that their actions would cause Ms. Gray to fall down the stairs.
It is equally clear that both of their actions contributed to the fall. Because of this, the court finds that no criminality can attach to defendant's act of grabbing at her mother's finger. The court also determines that no criminal liability flows from her failure to seek medical assistance for her mother.
Again, the only evidence presented is defendant's statement that she went down the stairs [*2]to help her mother and that she left her mother getting up and yelling at her to get out. Defendant complied with her mother's request, left to do chores and on her return discovered her mother's body.
The defense argues that failing to aid is an omission which cannot trigger criminal liability because a child owes no duty to a parent (see generally Penal Law § 15.00 [3]). The People concede that a child owes no duty to a parent, but contend that, having placed her mother in peril, defendant then had a duty to aid.
It is true that there is generally no legal duty of care on the part of an adult child to her infirm parents, and without a legal duty an omission to act may not give rise to criminal liability (People v Myers, 201 AD2d 855 [1994]; People v Spadaccini, 124 AD2d 859 [1986]). It is equally true, however, that creation of the peril imposes a duty to seek assistance. However, before such a duty is imposed, some finding of deplorable behavior must precede the failure to act, such as shooting the victim and leaving him to die (People v Woodruff, 4 AD3d 770 [2004]); supplying the cocaine that caused an overdose (State v Morgan, 86 Wash App 74, 936 P2d 20 [1997]); leaving a robbery victim in a cold and remote location (United States v Hatatley, 130 F3d 1399 [1997]); and causing a fire and failing to report it (Commonwealth v Levesque, 436 Mass 443, 766 NE2d 50 [2002]). In this case, the initial affirmative act was neither intentional nor reckless. In addition, defendant did attempt to assist her mother but was pointedly turned away, concealing Ms. Gray's true level of distress.
In hindsight, it is clear that defendant should have persisted in her effort to assist her mother. Ms. Sanford's leaving for five hours was a mistake, causing the direst consequence. Yet, it was not criminal. For behavior prescribed by humane considerations is not the subject of the court's inquiry. It is the law and not disapprobation {**4 Misc 3d at 184}that governs. Every accident does not impose a legal duty to assist. As was stated in State ex rel. Kuntz v Montana Thirteenth Jud. Dist. Ct. (298 Mont 146, 151, 995 P2d 951, 955 [2000]):
"For criminal liability to be based upon a failure to act, there must be a duty imposed by the law to act . . . This rule imposes no legal duty on a person to rescue or summon aid for another person who is at risk or is in danger, even though society recognizes that a moral obligation might exist . . . Thus, an Olympic swimmer may be deemed by the community as a shameful coward, or worse, for not rescuing a drowning child in the neighbor's pool, but she is not a criminal." (Citations omitted.)
Although no legal duty to act existed under the law, it is clear that both the act and omission in this case constitute one event. Parsing the unfortunate event into sequences of act and omission does nothing to advance the legal analysis. Since no recklessness or criminal negligence was involved in the act, the omission following immediately on its heels cannot elevate it. Leaving her mother was unthinking, but not so grossly apathetic as to rise to a criminal offense. 
[*3]
In the court's opinion, this event was a freak accident followed by a most unfortunate lapse in judgment. It was not, however, a crime.
For the reasons stated, the indictment is dismissed.