OPINION
Defendant-appellant, Donna M. Dunville, appeals her conviction in the Clermont County Court of Common Pleas for assault and failing to care for a functionally-impaired person.
Appellant is the widow of the deceased, Robert Dunville. Appellant and Robert lived at 5254 Stonelick-Williams Corner Road in Clermont County, Ohio. In 1995, Robert was diagnosed with a chronic, progressive form of multiple sclerosis ("MS"). He was expected to worsen due to the effects of the disease to the point of being immobile and eventually having problems breathing and swallowing.
Robert began regular visits to Dr. Khaldoun Mozahem at the MS clinic at the University of Cincinnati. Appellant accompanied Robert to these appointments. Prior to September 1996, the MS progressed rapidly. After September 1996, Robert missed appointments and soon stopped attending the clinic. At that point, Robert was unable to walk, and he spent his time at home in a reclining chair.
In May 1997, Robin Dunville, Robert's daughter and appellant's stepdaughter, visited Robert. Robin was alarmed at Robert's deterioration, and she proposed to assist appellant in caring for Robert or aid in finding an alternative to home care. Robert was adamant about staying at home, and appellant stated that Robert was her responsibility. During one visit, Robin brought a birthday cake which Robert ate "ravenously." Robert was upset, complaining to Robin that appellant would leave him alone all day, that appellant did not properly feed and care for him, and that appellant would return home drunk.
Robin called Clermont County Adult Protective Services, and Randy Yauss was sent to investigate. Yauss found Robert to be well-groomed and responsive, and there were no apparent unhealthy conditions. Yauss, though, did smell a strong odor of cats, and Robert's body odor and thinness were noticeable. At this visit, Yauss informed Robert of other care alternatives, but Robert refused to be moved to a nursing home or another health facility.
On August 27, 1997, the Clermont County Sheriff's Office received a dispatch call about a death at the Dunville residence. Deputy Mike Robinson was dispatched and was met by appellant, Robin, and Matthew Dunville, Robert's son. Dep. Robinson entered the residence over appellant's objections. Once inside, Dep. Robinson was met by an overpowering foul odor. The floor of the living room was covered in debris and trash. Robert was dead, seated in a reclining chair and covered by a filthy blanket. He was emaciated, sitting in soiled shorts. Beside the chair was a portable urinal, covered in mold and not emptied of urine and feces.
Further inspection revealed that the entire home was in similar condition. There was no running water or electricity. The upstairs bathtub and toilet contained feces. The door to the kitchen had to be opened by force, and the stove did not work. No food was found in the residence. The family dog was missing patches of fur and the family cat's entrails were exposed. The stench of the house was so overpowering that Dep. Robinson and other investigating officials had to periodically leave the residence so as to not vomit.
The Sheriff's Office called the Clermont County Board of Health. The health inspector substantiated the conditions in the residence. Based upon the filth and the potential health hazards posed in the residence, she declared the residence unfit for habitation and immediately began civil proceedings concerning the house. The civil proceedings have been held in abatement pending the resolution of the present criminal proceedings.
An autopsy of Robert's body revealed extreme emaciation, with Robert weighing only ninety-eight pounds. He had extensive bedsores, skin irritations, and ant and roach bites due to the lack of cleanliness. The coroner described Robert's condition as the worst case of bedsores that he had ever seen. The coroner's determination was that Robert died from bronchial pneumonia as a result of MS. Dr. Mozahem would later state that he was unable to recognize photographs of Robert due to the severe emaciation and condition of his body.
On November 12, 1997, a three-count indictment was filed against appellant. Count one charged involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the first degree. Count two charged assault in violation of R.C. 2903.13(B), a felony of the fourth degree. Count three charged failure to care for a functionally-impaired person resulting in serious physical harm in violation of R.C. 2903.16(A), a felony of the fourth degree. Appellant waived her right to trial by jury, and on September 28, 1998, a bench trial began.
Appellant was found guilty on counts two and three and not guilty on count one. Counts two and three were merged for purposes of sentencing. Appellant was ordered to serve a fourteen-month term of imprisonment. Appellant appeals raising two assignments of error which we will address in reverse order.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT MRS. DUNVILLE PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT HER ACTIONS WERE EXCUSED BY HER LATE HUSBAND'S REFUSAL OF CARE.
In her second assignment of error, appellant contends that she proved that Robert refused care and that this refusal excused her from providing care to him. Appellant asserts that it was Robert's refusal of care, and not a callous disregard on her part, which led to the filthy living conditions.
Refusal of care is not an affirmative defense which has been discussed in Ohio. The trial court found that those courts which have addressed the issue have deemed a refusal of care to be similar to consent or a negation of duty. See Washington v.Glucksberg (1997), 521 U.S. 702, 117 S.Ct. 2258; Cruzan v.Director of Missouri Dept. of Health (1990), 497 U.S. 261,110 S.Ct. 2851; Pennsylvania v. Konz (Penn. 1982), 450 A.2d 638. Under the trial court's analysis, refusal of care is an affirmative defense to be asserted by a defendant in accordance with R.C. 2901.05.[1] A defendant must prove an asserted affirmative defense by a preponderance of the evidence. R.C.2901.05(A).
We agree with the well-reasoned decision of the trial court. R.C. 2901.05 provides that an affirmative defense is that which involves "an excuse or justification peculiarly within the knowledge of the accused, on which [she] can be fairly required to adduce supporting evidence." An affirmative defense justifies conduct that is otherwise prohibited by law. Hurt v. Ohio LiquorControl Commission (Nov. 26, 1997), Montgomery App. No. 16232, unreported; State v. Thomas (Aug. 29, 1997), Hamilton App. No. C-960242, unreported.
R.C. 2903.16(A) provides:
 No caretaker shall knowingly fail to provide a functionally impaired person under the caretaker's care with any treatment, care, goods, or service that is necessary to maintain the health or safety of the functionally impaired person when this failure results in physical harm or serious physical harm to the functionally impaired person.
Before a functionally-impaired person's refusal of care can be considered a complete defense rather than an affirmative defense, it must negate an essential element of the offense rather than justify the defendant's conduct. The asserted refusal of care must be tantamount to a denial that an unlawful act was committed for it to be considered a complete defense.Thomas. The functionally-impaired person's refusal of care will not change the fact that the caretaker did not provide treatment, care, goods, or services necessary to maintain the health or safety of the functionally-impaired person, or that physical harm or serious physical harm resulted from the lack of care. Instead, refusal of care justifies the caretaker's failure to provide necessary services once the refusal of care is expressed. Thus, the trial court was correct in finding that the functionally-impaired person's refusal of care is an affirmative defense to the charge of failing to provide for a functionally-impaired person.
Appellant contends that the trial court erred in finding that she had not proven by a preponderance of the evidence that Robert refused her care. On one hand, testimony was presented that Robert had refused Yauss' suggestion that he seek alternative care through Adult Protective Services. There was also testimony that Robert refused Robin's attempt to convince him to move into a nursing home or another care facility. On the other hand, there was testimony that appellant prevented Robin from attempting to aid in Robert's care. Appellant told Robin that only she would be Robert's caretaker. It was established that Robert wanted to remain home, but the trial court believed that to then conclude that Robert refused all care would require it to speculate as to Robert's actual wishes.
We do not believe that a statement by a functionally-impaired person that they wish to remain at home, rather than in an institutional facility, is tantamount to a refusal of all care. At trial, the state argued that even had Robert not wanted extreme measures to be taken to preserve his life, and even if he had wanted to allow himself to deteriorate, his refusal of care was not equal to a wish to live in the filthy and deplorable conditions in which his body was found. Appellant did not provide any evidence that Robert wanted to die in conditions which were not as comfortable as possible. The trial court refused to make the inference that Robert's wish to remain at home was equal to a willingness to die in such inhumane conditions. We agree.
The trial court did not err by ruling that appellant failed to prove the affirmative defense of refusal of care by a preponderance of the evidence. Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY SENTENCING APPELLANT, MRS. DUNVILLE, TO A FOURTEEN-MONTH PRISON TERM FOR A FIRST-TIME FELONY OFFENSE OF THE FOURTH DEGREE.
In her first assignment of error, appellant contends that the trial court erred by sentencing her to prison rather than community control. Appellant further asserts that her offense did not warrant a sentence above the minimum term of imprisonment.
Pursuant to R.C. 2953.08(G)(1), an appellate court may not disturb a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law or statute. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Garcia (Mar. 2, 1998), Clermont App. No. CA97-04-042, unreported, at 4. The sentence imposed upon the offender should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender." R.C.2929.11(A).
Before a trial court imposes a sentence for a felony of the fourth degree, the trial court must determine whether certain enumerated factors are present in relation to the offense. R.C.2929.13(B)(1). As relevant to the instant case, these factors include:
 (a) In committing the offense, the offender caused physical harm to a person.
* * *
 (h) The offender previously was subject to a community control sanction, and the offender committed another offense while under the sanction.
Once the trial court determines that one or more factors listed in R.C. 2929.13(B)(1) are present, the trial court reviews the seriousness of the offense and the likelihood that the offender will commit future offenses. The trial court must then decide whether a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and whether the offender is amenable to community control sanctions. R.C.2929.13(B)(2)(a).
When reviewing the seriousness of the offender's conduct, the trial court is guided by R.C. 2929.12(B), which lists factors for the trial court's consideration. As relevant to the instant case, these factors include:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
* * *
 (6) The offender's relationship with the victim facilitated the offense.
R.C. 2929.12(C) lists factors which the trial court may consider as indicating that the offender's conduct is less serious than that normally constituting the offense. As relevant to the instant case, these include:
 (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
Pursuant to R.C. 2929.12(B) and R.C. 2929.12(C), the trial court may also consider "any other relevant factors."
The trial court found that appellant had neglected to provide Robert with basic services which would have ensured that he lived in a clean, comfortable residence. Not only did appellant fail to assist Robert, she prevented others from providing care by insisting that Robert was her responsibility and that she would care for him. Robert suffered from extreme bedsores at the time of his death, and these bedsores were facilitated by appellant's refusal to provide rudimentary care.
The trial court was cognizant of Robert's expressed wish to remain at home and to die there, which the trial court believed alleviated appellant of the responsibility of attempting to prolong Robert's life. The trial court was also mindful that on occasion, appellant had to get away from the frustration and depression which surrounded the decline in Roberts's health. But these circumstances did not excuse appellant from providing a safe and comfortable environment for Robert. The trial court noted that
 the conditions surrounding his death and the squalor in which he died goes beyond getting away from things, beyond being depressed and frustrated about your inability to stop this condition.
* * *
 But, again, that does not explain the conditions surrounding his death, which were again evidenced by the pictures [of the residence] to be pathetic squalor and outright filth. You kept away, I think, people that could have helped.
The trial court did not err in finding that the seriousness of the harm and circumstances of appellant's offense outweighed any mitigating factors.
When reviewing whether an offender poses a likelihood of recidivism, the trial court is guided by factors listed in R.C.2929.12(D). As relevant to the present case, these include:
 (1) At the time of committing the offense, the offender was under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense.
 (2) The offender * * * has not responded favorably to sanctions previously imposed for criminal convictions.
The trial court may consider factors included in R.C. 929.12(E) as indicating a lesser likelihood of recidivism. As relevant to the present case, these include:
 (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 (4) The offense was committed under circumstances not likely to recur.
Pursuant to both R.C. 2929.12(D) and R.C. 2929.12(E), the trial court shall consider the offender's remorse, or lack thereof, when judging the likelihood of recidivism. The trial court may also consider "any other relevant factors."
In reviewing the factors on recidivism, the trial court acknowledged that there were factors which tended to indicate a lower likelihood that appellant would commit future offenses. The circumstances of appellant's offense were unique, and appellant had been law-abiding for most of her life. The trial court, though, felt it important that appellant was on probation for driving while under the influence ("DUI") offense at the time of the present offense. The trial court felt that this prior DUI and appellant's failure to complete court-ordered treatment were indicative of appellant's attitude regarding her responsibilities towards Robert and the remorse she feels for her crime. The trial court noted that appellant was remorseful about Robert's death, but her remorse for failing to care for Robert in his final months was questionable.
The trial court found that community control sanctions would not be appropriate in light of the severity of the harm caused by appellant's conduct. We find that the trial court did not err in finding that community control sanctions would be inappropriate, and that a prison term was necessary in light of the purposes and principles of sentencing contained in R.C. 2929.11.
The trial court merged the assault and failure to provide for a functionally-impaired person charges, both felonies of the fourth degree, for purposes of sentencing. The trial court then sentenced appellant to serve a fourteen-month term of imprisonment. Appellant contends that this sentence was not supported by the record.
When the trial court has determined that a prison term must be imposed upon the offender for a felony of the fourth degree, the trial court may impose a prison term of six to eighteen months. R.C. 2929.14(A)(4). If the offender has not served a previous prison term, the trial court must impose the minimum sentence, unless the trial court finds that to do so would "demean the seriousness of the offender's conduct" or "not adequately protect the public from future crime by the offender or others." R.C. 2929.14-(B).
In the instant case, the trial court specifically found on the record that to sentence appellant to the minimum sentence would demean the seriousness of her offense. The trial court expressed at more than one point that it found Robert's bedsores and the abhorrent conditions in which he was found to be unconscionable. The trial court found that the state had demonstrated that Robert's last days were "miserable," and that appellant's lack of care was the cause of the deplorable conditions in which Robert died. The trial court found that the minimum sentence would demean the seriousness of appellant's offense, and that something more than the minimum sentence was required in appellant's case.
We find that the trial court's imposition of a fourteen-month term of imprisonment is supported by the record. The trial made findings sufficient to justify such a sentence. Accordingly, appellant's first assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] R.C. 2901.05 provides in part:
 (A) The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.
* * *
 (C) As used in this section, an "affirmative defense" is either of the following:
(1) A defense expressly designated as affirmative;
 (2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.